FRANK E. ALDRICH & another *vs.* BAY STATE CONSTRUC-
TION COMPANY.

Franklin.   September 20, 1904. — October 18, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Contract*, Construction.  *Option.  Agency.  Evidence*, Of value.  *Words*, "Either",
"Take."

The rule of construction, that the language of an instrument in writing in case of
doubt is to be construed against the party using it, is not to be resorted to
where the intention of the parties otherwise appears.

In an action of contract for the price of street railway ties furnished to a construc-
tion company, it appeared, that the defendant offered to buy the ties from the
plaintiff, paying in cash a price less than that asked by the plaintiff, or paying
him the full price in the stock of either of two street railway companies, the
G. & T. or the D., at the plaintiff's option.  The plaintiff replied in a letter that
he would sell the ties at the full price and "take stock in either the G. & T. or
D. roads."  The ties were delivered and the plaintiff demanded payment in
G. & T. stock, which the defendant refused, claiming the right to pay him in
stock of the D. road, which the plaintiff refused to receive.  *Held*, that the plain-
tiff's letter did not necessarily mean that the defendant might pay him in either
of the two stocks at its option, but might be found to mean, that the plaintiff
would take his pay in the stock of one or the other of the two roads as he might
elect, in accordance with the defendant's offer.

Where it appears at a trial that a contract was made by an oral offer accepted by
a letter, the presiding judge may give his construction of the letter with refer-
ence to the circumstances which the evidence tends to establish as existing
when it was written, and leave to the jury the question whether the existence
of those circumstances has been established by the evidence.

The purchasing agent of a construction company, who has authority to buy street
railway ties for the corporation and agrees to pay for them in the stocks of two
street railway companies, may be found to have authority to agree to pay for
the ties wholly in one of the stocks rather than the other.

On the question of the value of the stock of a corporation, if there have been no
sales of the stock and therefore there can be no possible evidence of ordinary
market value, *semble*, that the treasurer of the corporation, who also is the presi-
dent of another corporation owning shares of the stock, may be allowed to testify
that in his opinion a fair market value of the stock would be its par value of
$100 a share.

CONTRACT for the price of street railway ties sold and deliv-
ered to the defendant.   Writ in the District Court of Franklin
dated April 20, 1904.

On appeal to the Superior Court the case was tried before
*Fox*, J., who ruled and refused to rule as stated in the opinion.

The jury returned a verdict for the plaintiffs in the sum of $458.73; and the defendant alleged exceptions.

*W. A. Davenport*, for the defendant.

*B. H. Winn*, for the plaintiffs.

BARKER, J. The plaintiffs having street railway ties for sale were called upon by the defendant's purchasing agent who offered them a price less than they asked and also offered to pay in stock of either of two railway companies. The defendant admits that the offer of payment in stock was an offer to allow the plaintiffs the choice as to the company whose stock they should take. At the interview no bargain was made, the purchasing agent going away to ascertain whether the defendant would pay the price asked, and the partner who had acted for the plaintiffs to ascertain whether they would take pay in stock. After a few days the plaintiffs on April 20, 1903, wrote:

" Mr. Allen and I have decided to let you have the electric ties you saw the other morning, at 22¢ each down to 4 in. face, loaded on the cars at So. Vernon. Will take stock in either the Greenfield and Turners Falls or Deerfield roads. Please let me hear at once if this is all right.

" Respectfully,
" Allen & Aldrich."

In reply the defendant wrote as follows:

" Your letter relating to ties has been received and I think we can use your ties as per your agreement. Will you kindly let me know when you intend to load these ties and be sure and load them in as large cars as possible and put in full loads. Please ship the first car to Greenfield consigned to the Bay State Construction Co.

" Yours very truly,
" Bay State Construction Co."

The ties were delivered without further communication between the parties, and at the trial the defendant agreed that it received them, that they were satisfactory and that the number of ties and the price stated in the plaintiff's declaration were correct. On July 6, the plaintiffs went to the defendant's office and by an oral bargain sold the defendant more ties at the same rate. Whether on this occasion they told the defendant's purchasing agent that they wanted the Greenfield and Turners

Falls stock, and that he replied "All right" was in dispute upon the evidence, and also whether on the same *occasion* the defendant's president said that the letter called for Deerfield stock and the plaintiffs assented and told him how to make out the certificate. It was not in dispute that the ties sold on July 6 were delivered nor that the charges for them in the declaration were correct.

Before suit was brought the defendant sent by mail to the plaintiffs four shares of stock in the Greenfield and Deerfield Railway Company and a check for $38.02 and the stock and check were returned. After the suit was brought a legal tender of the stock and of the amount of money for which the check was drawn with interest and costs was made and the stock and money so tendered were duly brought into court and the tender was pleaded by the defendant as its defence to the action.

At the trial the defendant asked the judge to rule that by the letter of April 20 the plaintiffs gave to the defendant the option of delivering either stock. The judge refused to give the ruling and instructed the jury that the letter did not necessarily mean that the option was to be exercised by the defendant. The exception to this refusal to rule and to the contrary instruction given raises the principal question in the case.

The defendant contends that when the true meaning of a written instrument is doubtful it must be construed most strongly against the person using the doubtful language. This doctrine is sometimes applied in favor of a party who has been misled into advancing money. See *Barney* v. *Newcomb*, 9 Cush. 46, 56. But it should be applied only in the last resort, when all other rules of construction fail. *Boston* v. *Richardson*, 13 Allen, 146. Our first duty is to put ourselves in the place of the parties to the instrument and then to read it giving to its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter, the acts of the parties and their relations to each other. *Farnsworth* v. *Boardman*, 131 Mass. 115.

The plaintiffs had for sale railway ties and were asking for them twenty-two cents apiece. They were not in the business of buying stocks. The defendant was not a stock broker dealing in options, but a construction company, buying ties and offering

the plaintiffs for certain ties twenty-one cents apiece, but wanting to know what they would sell for and take pay in one of two stocks, the plaintiffs to have their choice between the two. The parties separated, the plaintiffs to determine whether they would take stock in payment and the defendant to determine whether it would pay the rate asked. The plaintiffs decided to take stock as offered and the defendant to pay the price asked, and under these circumstances the letter was written and received and its offer accepted by a reply which said nothing as to the particular stock to be used in payment.

According to the talk the option to take either stock was in the plaintiffs. To make a valid contract on the only lines under consideration by both parties nothing more was necessary than for the plaintiffs to agree to take stock in payment and for the defendant to assent to the price demanded. The performance of such a contract, but not its making, would involve the choice by the plaintiffs of one of the two stocks. If upon the interchange of the letters the option was in the defendant instead of in the plaintiffs a new term had been imported into the proposed bargain. If the language used so meant, such would be the legal result of the letter and the reply, but not otherwise.

To show that such is the meaning of the plaintiffs' letter the defendant quotes as a definition of the word " either " the words " one or the other of two, taken indifferently ", while the dictionary to which reference is made adds " or as the case requires." Common definitions of the word are " one of two ", " the one or the other." But the word when used in a connection which implies a choice of action on the part of the person using it indicates that the option is in the person who is to do the act involving the choice. It is the person who is to take one of two apples who may take either apple.

> " spirits when they please,
> Can either sex assume, or both ; " *

So with the word " take." While it may be used in a passive sense, as " to receive ", or " to accept ", its more usual and ordinary meaning is in an active sense " to procure ", " to make selection of ", " to choose." It is not until the circumstances under

---

* Milton's Paradise Lost, *Book 1, lines 423, 424.*

which the letters were written are disclosed by outside evidence that the words " Will take stock " are shown to have connection with the sale of the ties, and to designate a way of liquidating the debt to arise if the plaintiffs' offer should be accepted.   The language used is not " You may pay in stock of either road ", but " Will take stock in either the Greenfield and Turners Falls or Deerfield roads ", that is to say in either one or the other. The action promised is action on the part of the plaintiffs. Giving to the language used that one of its usual plain and ordinary meanings which is pointed out by the situation and purpose of the parties, the legal meaning of the letter is to offer to sell ties at a rate stated, for payment in one of two named stocks, the one so to be used to be selected by the plaintiffs, and not by the defendant.   We think therefore that the ruling requested, that the letter gave the defendant the right to deliver either stock was wrong, and that the instruction that the letter did not necessarily mean that the option was to be exercised by the defendant was right, so far as it went.   As the evidence stood it would have been wrong to apply the rule of construction now contended for by the defendant.   See *Bascom* v. *Smith*, 164 Mass. 61, 76.

As there was evidence that before the certificates for Greenfield and Deerfield stock were sent the plaintiffs made known their election to take payment in the other stock the ruling requested that upon all the evidence the defendant was entitled to a verdict was wrong for the reason already stated, as well as for another.   Some of the ties were sold on July 6, and it was admitted that they were delivered and that the prices charged were correct and that they were not paid for unless in the Greenfield and Deerfield stock.   But the plaintiffs' evidence tended to show that at the time of that sale they said they would take the other stock and that that statement was assented to by the purchasing agent.   If so the plaintiffs had a clear right to a verdict in respect of the ties sold on July 6.   The evidence was abundant that the purchasing agent had authority at that time to make the bargain which the plaintiffs testified then was made.

The defendant now contends that it was the duty of the judge to construe the letter and not leave it to the jury as a question

of fact. No exception is specifically directed to this phase of the case.

The judge did construe the letter and gave it a construction contrary to that for which the defendant contended. We think that the course pursued followed as near as might be that approved in *Bascom* v. *Smith, ubi supra,* of undertaking to construe the contract with reference to all the circumstances which the evidence tended to establish as existing when it was made and leaving it to the jury to determine whether the circumstances assumed had been established by the evidence. As was said in *Bascom* v. *Smith* "This is not leaving the whole construction of a written contract to the jury."

There was contradictory evidence as to what occurred on July 6. At that time neither party had attempted to designate to the other which of the two stocks should be used in the payment. The plaintiffs' evidence tended to show that they then said to the purchasing agent, who then bought of them the second lot of ties that they would take the Turners Falls stock and that the agent replied "All right, I will send it to you." The defendant's evidence tended to show that the defendant's president said that the contract called for Deerfield and Northampton stock and that the plaintiff assented to that and told the officer to have the stock delivered and how to make out the certificates. The judge instructed the jury in substance that whatever the effect of the negotiations between the parties had been before that time, that if there was an agreement either way on July 6, that agreement by way of modification of the original contract would govern. To this instruction the defendant excepted, and now contends that it was wrong because the authority of the purchasing agent was limited to the buying of ties and did not extend to the modification of contracts. The bill of exceptions does not show that the question of the purchasing agent's authority was raised at the trial. However this may have been, he then could buy ties for stock and we think the evidence discloses sufficient authority for him then to bind the defendant to pay in either stock for the ties first sold as well as for those then sold.

The same person who was the president of the defendant construction company held also the office of treasurer in each of the

street railway companies. There had been no sales of stock of the Turners Falls Company. Under these circumstances the judge admitted his answer to the question what in his opinion would be the fair market value of the stock, that he should call it $100 per share. The bill of exceptions does not show that either this question or the answer given were excepted to, although it shows an exception to evidence of value on a certain date. We think the evidence was properly admitted, in the absence of any possible evidence of ordinary market value.

The remaining contentions of the defendant are as to the amount of the recovery as affected by the value of the stock, by the time of demand and by interest. The only evidence as to the value of the stock being that the market value and par value were the same, and there being sufficient evidence in our opinion to justify the jury in finding a demand of payment, the instructions excepted to were right.

*Exceptions overruled.*