FRED T. LEY & CO., INC. *vs.* RAPHAEL SAGALYN & others.

Hampden.     December 6, 1937. — March 4, 1939.

Present: FIELD, C.J., LUMMUS, QUA, & COX, JJ.

*Contract,* Construction, Of guaranty, Performance and breach.   *Tax,*
Betterment.   *Equity Jurisdiction,* Nominal damages.   *Damages,*
Nominal.

An agreement under seal with the grantor of land in a city that the
obligor individually would "guarantee the performance of an agree-
ment," made by him as trustee-grantee in the deed, "to pay" a
betterment assessment laid both upon the land described in the deed
and upon an adjoining parcel formerly owned by the grantor, and to
"pay said assessment" upon demand by the grantor if, upon its non-
payment, the city should advertise the property for sale for collection,
so as to relieve the adjoining property "from the lien of said assess-
ment," was not an agreement of mere indemnity against loss resulting
from the assessment but required the obligor to pay it, and this re-
quirement was not qualified by the succeeding independent state-
ment of obligation arising in the event of advertisement for sale.
The real estate lien was the only means of collecting a betterment assess-
ment made in 1918.
A suit in equity to establish an obligation under an agreement under
seal, broken by the defendant, to pay a betterment assessment and
to reach and apply equitable assets to its payment was dismissed
where it appeared that, when the agreement was made, the lien of
the assessment had expired so that no substantial damage resulted
from the breach of the agreement.

BILL IN EQUITY, filed in the Superior Court on Novem-
ber 1, 1933.

The case was heard by *Williams,* J., and in this court was
submitted on briefs.

*N. M. Harvey & J. H. Mulcare,* for the defendants.

*R. P. Dunning,* for the plaintiff.

LUMMUS, J.   On June 21, 1920, the plaintiff, Fred T.
Ley & Co., Inc. conveyed by warranty deed to three
trustees under a written declaration of trust of F. A. Bas-
sette Company, a voluntary association having shares, a
parcel of land at the southwesterly corner of Dwight and

Hillman streets in Springfield, subject to a mortgage and to the annual taxes of the year 1920. In fact, though no mention of it was made in the deed, the parcel was subject also to an unpaid betterment assessment levied by the city of Springfield on December 23, 1918, as a result of the widening of Dwight Street in 1916. In the deed the grantor covenanted with the grantees and their heirs, successors and assigns, among the other usual covenants, that the granted premises "are free from all encumbrances, except as aforesaid." To protect the purchasers further from that betterment assessment, the grantor gave to the trustees "and their heirs, successors, executors, administrators and assigns" a separate covenant under seal to hold the trustees harmless from that betterment assessment.

On October 6, 1922, the plaintiff Fred T. Ley & Co., Inc. conveyed by warranty deed to Herman Adaskin, Raphael Sagalyn and Samuel Wiener, trustees of the Walnut Realty Trust under a recorded declaration of trust, a parcel on Dwight Street south of and adjoining the parcel conveyed in 1920, described in the preceding paragraph. The deed of October 6, 1922, recited that it was made subject to the same betterment assessment, amounting to $21,706.50 and interest at the rate of six per cent per annum from March 1, 1922, covering the land conveyed and that conveyed in 1920 to the trustees of F. A. Bassette Company, "which the grantees assume and agree to pay." The assessment covered both parcels as a unit. As the grantees did not sign or seal the deed, the words quoted created only a simple contract when the grantees accepted the deed. *Locke* v. *Homer*, 131 Mass. 93, 102, 107. *Goodenough* v. *Labrie*, 206 Mass. 599, 601. *Flynn* v. *Kenrick*, 285 Mass. 446, 448, 449. But in addition, on the same day, the grantees, signing as individuals without any description of themselves as trustees and without other qualification, entered into an agreement under seal with the plaintiff, reciting that "we the undersigned do hereby covenant and agree with said Fred T. Ley & Co., Inc. that we will guarantee the performance of said agreement by said trustees [i.e., themselves as trustees] to pay said assessment, and if

said assessment shall not be paid when demanded by the city of Springfield and said city shall advertise said property for sale to collect said assessment, we will upon demand by said Company pay said assessment with interest and costs so as to fully relieve the property sold by said Company to the trustees of the F. A. Bassette Company from the lien of said assessment." This was a joint covenant. *Lovell* v. *Commonwealth Thread Co. Inc.* 272 Mass. 138, 141. *Childs* v. *Childs,* 293 Mass. 67, 71.

In 1926, the trustees and all the shareholders of F. A. Bassette Company conveyed to a corporation known as Bassette Company Realty Corporation the parcel of land conveyed to the trustees of 1920, described in the first paragraph of this opinion, "with the benefit of but subject to the burdens imposed by the easements, reservations, restrictions, covenants and agreements contained in and/or referred to in said deed [of 1920] above mentioned, so far as the same are now in force and applicable. Subject also to all other encumbrances of record." The trustees "as trustees," for themselves and their successors, gave the usual covenants of a warranty deed, including a covenant that the granted premises "are free from all encumbrances except as aforesaid." In 1932 the trustees and all the shareholders of F. A. Bassette Company conveyed all the assets, tangible and intangible, including contracts and choses in action, to a corporation known as The F. A. Bassette Company. On the same day the trustees, both personally and as trustees, and The F. A. Bassette Company (the corporation) assigned, to Bassette Company Realty Corporation all their right in and to a claim against Fred T. Ley & Co., Inc., "for damages and/or indemnification" by reason of the betterment assessment, "said claim for damages and/or indemnification growing out of: 1. A covenant against encumbrances contained in a certain deed from said Fred T. Ley & Co., Inc. to the said trustees dated June 21, 1920 . . . and 2. 'A certain agreement of indemnification between said Fred T. Ley & Co., Inc. and said . . . [three trustees named], both personally and as such trustees, dated June 21, 1920."

On July 31, 1933, the assessment had been paid down to $10,000, which with accumulated interest remained due. At that time E. J. Pinney, Incorporated, owned the southerly parcel by virtue of a deed from Adaskin and others, trustees of the Walnut Realty Trust. The city of Springfield made demand for payment upon both Bassette Company Realty Corporation and E. J. Pinney, Incorporated. As a result, on July 31, 1933, Bassette Company Realty Corporation paid the city $5,500 plus accumulated interest of $632.50, a total of $6,132.50, and E. J. Pinney, Incorporated, discharged the rest of the assessment with interest. On August 4, 1933, Bassette Company Realty Corporation demanded repayment of $6,132.50 from the plaintiff. The plaintiff expressly admits its liability to Bassette Company Realty Corporation in the amount just stated. On August 7, 1933, the plaintiff demanded payment of the same amount from Harry V. Pilnick, administrator of the estate of Samuel Wiener, and from Raphael Sagalyn and Herman Adaskin as individuals.

On November 1, 1933, the plaintiff, Fred T. Ley & Co., Inc. brought this bill against Pilnick as administrator, and Adaskin and Sagalyn as individuals, for the purposes of enforcing their obligation to the plaintiff to repay the sum of $6,132.50 paid in satisfaction of the assessment, and of applying certain property in payment of their debt in accordance with G. L. (Ter. Ed.) c. 214, § 3 (7), (8). The bill was amended on May 29, 1934, by striking out Bassette Company Realty Corporation as an additional plaintiff, and by making it a defendant. The defendants Adaskin, Sagalyn and Pilnick as administrator, appealed from the decree allowing the amendment of the bill. But they do not argue that appeal in their brief, and therefore waive it. *Boston* v. *Dolan*, 298 Mass. 346, 355. Pending the suit, the defendant Adaskin died on October 21, 1935, and Edward Adaskin and Sadie W. Adaskin, the executors of his will, became defendants in his stead.

The final decree ordered the defendant Raphael Sagalyn as an individual, and also as trustee, the defendant Harry V. Pilnick as administrator of the estate of Samuel Wiener,

and the defendants Edward Adaskin and Sadie W. Adaskin as executors of the will of Herman Adaskin, jointly and severally to pay to the defendant Bassette Company Realty Corporation, in exoneration of the plaintiff from its obligation to that corporation, the sum of $6,132.50 with interest from the day of demand, August 7, 1933, and to pay costs to the plaintiff. Other provisions of the decree are immaterial to the questions argued. The defendants do not contend that there was error in respect to the joinder of defendants or the capacities in which liability was imposed on them by the final decree; and the plaintiff has not appealed. See *Tyler* v. *Brigham*, 143 Mass. 410, 413. In equity a single suit may be maintained against a surviving joint contractor and the executor or administrator of a deceased one. *Von Arnim* v. *American Tube Works*, 188 Mass. 515, 520, 521. Compare the rule at law, *New Haven & Northampton Co.* v. *Hayden*, 119 Mass. 361; *Armstrong Knitting Mills* v. *Oakes*, 249 Mass. 397. The three defendants who were ordered to pay appealed from the final decree.

A technical breach of covenant, giving the plaintiff a right to nominal damages at law, was properly found. It is true that the words "which the grantees assume and agree to pay," in the deed of October 6, 1922, from the plaintiff to the trustees of the Walnut Realty Trust, created only a simple unsealed contract on the part of the trustees, recovery upon which became barred in six years under G. L. (Ter. Ed.) c. 260, § 2, First. The sealed contract entered into by them on the same day bound them jointly as individuals. The first clause of that contract provided that "we will guarantee the performance of said agreement by said Trustees [i. e., the agreement by themselves as trustees] to pay said assessment." It makes no difference whether the contract resulting from the acceptance of the deed be regarded as one binding the trustees personally, or, as we do not intimate, one binding only the trust property. In either view, the sealed contract obligated the trustees personally to pay the assessment. That they never did. Their covenant was not one of mere indemnity against loss re-

sulting from the assessment. *Broadway National Bank of Chelsea* v. *Hayward*, 285 Mass. 459, 465, 466, and cases cited. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 169–170, 172. *Gerber* v. *Berstein*, 295 Mass. 132, 137. Their sealed obligation continued to be enforceable for twenty years, and recovery upon it is not yet barred. G. L. (Ter. Ed.) c. 260, § 1, First. In our opinion that obligation was not qualified or cut down by the conditions attached to the second or succeeding independent statement of obligation contained in the sealed contract. *Locke* v. *Homer*, 131 Mass. 93, 109. *Farnsworth* v. *Boardman*, 131 Mass. 115, 121, 122. *Shattuck* v. *Adams*, 136 Mass. 34, 36. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 169. Assuming that laches could be a defence to a suit upon a legal obligation not barred by the statute of limitations, no laches appears.

A right to substantial damages is harder to discover upon the facts found. The statute in force at the time of the assessment (R. L. [1902] c. 50, § 10; St. 1917, c. 344, Part III, § 10), provided that such an assessment "shall constitute a lien upon the land assessed and shall be enforced in the manner provided for the collection of taxes." It is true that at the time collection by action, distress or imprisonment was possible in the case of ordinary annual taxes. R. L. (1902) c. 13, §§ 20–33. G. L. (1921) c. 60, §§ 24–36, and intervening statutes cited. *Webber Lumber Co.* v. *Shaw*, 189 Mass. 366. *Dunham* v. *Lowell*, 200 Mass. 468. *Saftel* v. *Brooks*, 254 Mass. 516. *Massachusetts Hospital Life Ins. Co.* v. *Shulman*, 299 Mass. 312. But R. L. (1902) c. 50, § 10, and St. 1917, c. 344, Part III, § 10, were brought forward, without material intervening legislation or apparent intent to change the law, from Pub. Sts. (1882) c. 51, §§ 5, 7, which provided no remedy except the enforcement of the lien. We think that the words already quoted from R. L. (1902) c. 50, § 10, and the statute of 1917 meant, as Pub. Sts. (1882) c. 51, §§ 5, 7, plainly said, that what was to "be enforced in the manner provided for the collection of taxes" was the lien and not the assessment, notwithstanding the plausible grammatical

argument to the contrary. In our opinion the lien afforded the only means of collecting the assessment. *Roxbury* v. *Nickerson,* 114 Mass. 544. *West Roxbury* v. *Minot,* 114 Mass. 546. *Worcester County* v. *Mayor & Aldermen of Worcester,* 116 Mass. 193. *Proprietors of the Cemetery of Mount Auburn* v. *Mayor & Aldermen of Cambridge,* 150 Mass. 12. Later statutes have made perfectly clear what was implicit before, that the enforcement of the lien is the only remedy for the municipality. St. 1918, c. 257, § 219, subsection 4, which became in substance G. L. (1921) c. 80, § 4. G. L. (Ter. Ed.) c. 80, § 4, as last amended by St. 1933, c. 63, § 1. Preliminary Report of Commissioners to Consolidate and Arrange the General Laws (1918), vol. I, 230. The lien in the present case expired "at the expiration of two years from the first day of October" in the year of assessment, or at the latest at the time of the alienation of the second parcel on October 6, 1922. St. 1909, c. 490, Part II, § 36. St. 1918, c. 257, § 46. G. L. (1921) c. 60, § 37. The earlier law as to the duration of a tax lien, stated in Pub. Sts. (1882) c. 12, § 24, and *O'Connell* v. *First Parish in Malden,* 204 Mass. 118, 120, had been obsolete ever since St. 1888, c. 390, § 30. To sum up, since October 6, 1922, the plaintiff has had neither liability for the assessment nor any interest in the land assessed. The breach by the defendants of their covenant has been of no interest or concern to the plaintiff, unless the plaintiff was under some obligation to Bassette Company Realty Corporation to see the assessment paid.

Bassette Company Realty Corporation had no need to pay the assessment. It had no liability to pay, and its property could not have been seized or sold upon the lien, which had expired long before. Neither the original trustees of F. A. Bassette Company nor Bassette Company Realty Corporation could have any claim against the plaintiff upon its covenant to hold the trustees harmless from the assessment, for after October 6, 1922, at the latest, the assessment was innocuous and could harm no one. It constituted, it is true, a breach of the covenant against encumbrances in the deed of June 21, 1920. The

encumbrance, however, had disappeared upon the expiration of the lien not later than October 6, 1922. After that there was no encumbrance, the expense of removing which could constitute substantial damage to the covenantee. *Smith* v. *Carney*, 127 Mass. 179, 182. *Bradshaw* v. *Crosby*, 151 Mass. 237. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 173–174.

The final decree is reversed, and a new final decree is to be entered dismissing the bill with costs. Equity pays no attention to nominal damages. *Cragin* v. *Jones*, 283 Mass. 474, 480. *Kornder* v. *Kings County Elevated Railroad*, 61 App. Div. (N. Y.) 439.

It is proper to add, that though we must decide the case upon the facts shown by the record upon which it was submitted, we are aware of the possibility that a contention might be made that under the applicable statutes the lien of the assessment was continued in force until the assessment was paid on July 31, 1933. If such a contention is made, the Superior Court has power under the practice in this Commonwealth to do justice by reopening the case, by determining the true facts, and by entering such decree as law and justice may require upon the facts so determined. *West* v. *Platt*, 124 Mass. 353, 355. *Long* v. *George*, 296 Mass. 574, 577, and cases cited.

*Ordered accordingly.*