GERALD W. BLAKELEY, JR., trustee, & others vs. PILGRIM
PACKING CO. & another.[1]

Middlesex.    November 17, 1975. — January 14, 1976.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Practice, Civil,* Master: findings.    *Jurisdiction, Civil,* Laches.    *Laches.*
*Real Property,* Restriction.

The developers of an industrial park were not barred by laches from
  restraining certain activities of the defendants, alleged to be in vio-
  lation of restrictive covenants in a deed and in a separate restrictive
  agreement, where the defendants failed to show any prejudice from
  the plaintiffs' delay in enforcing the restrictions. [22-24]
A restrictive agreement between the developers of an industrial park
  and a meat-processing company which limited the company's retail
  sales on the property to "those ... necessary to dispose of excess
  products not sold or distributed through their normal wholesale or
  other non-retail selling operations" did not permit the sale of sand-
  wiches and other incidental products. [24]

BILL IN EQUITY filed in the Superior Court on November
18, 1971. The suit was heard by *McNaught, J.,* on a mas-
ter's report.

*Walter G. Van Dorn (Dean P. Nicastro* with him) for
the plaintiffs.

*Oscar J. Toye* for the defendants.

HALE, C.J.    The plaintiffs appeal from the dismissal of
their bill in equity to restrain certain activities of the de-
fendants, alleged to violate restrictive covenants in a deed
and in a separate restrictive agreement. The suit was re-
ferred to a master, who reported subsidiary findings and
ultimate conclusions. He made a summary of evidence
under Superior Court Rule 90 (1954) (see now Rule 49

---

[1] Win-Burn Realty Associates, Inc.

[7] [1974]) in response to certain objections made by the plaintiffs.[2]

The plaintiffs are the trustees of two Massachusetts trusts, Ninety-Three Industrial Center Trust (the Trust) and Cabot, Cabot & Forbes Co. (Cabot), the developers of a 10.3 acre industrial park in Woburn. The Trust is a wholly owned subsidiary of Cabot. By a deed dated August 10, 1962, the Trust conveyed a parcel in the industrial park to the defendant Win-Burn Realty Associates, Inc. (Win-Burn). The deed contained certain restrictions on the use of the property.[3]

The defendant Pilgrim Packing Co. (Pilgrim) operated a plant for the processing and packing of meat products such as sausages, bolognas, and cooked salami on the Win-Burn property. In a separate letter agreement, also dated August 10, 1962, Pilgrim agreed to certain restrictions on the operation of a retail store associated with the factory and on use of the premises generally.

In settlement of an earlier suit brought by the plaintiffs to enforce the August 10, 1962, deed restrictions and the separate letter restrictions, the defendants and the plaintiffs, on December 1, 1967, executed a document entitled "Restrictive Agreement," which was recorded. That agreement embodied the essential terms of the 1962 letter agreement. Win-Burn and Pilgrim agreed that for a period of thirty years they would not "engage in any retail selling

---

[2] Although a transcript of the entire proceedings before the master was included in a supplementary appendix, we do not consider it as it is not properly before us. The order of reference included no instruction that the master report the evidence or file a transcript thereof in the clerk's office. See Mass.R.Civ.P. 53 (e)(1), as amended, 367 Mass. 917 (1975).

[3] The master reported the following relevant restrictions: "There shall be maintained facilities for parking, loading and unloading reasonably sufficient to serve the business conducted without using adjacent streets. Reasonable care shall be used to maintain neatly the exterior appearance of said premises in accordance with such plans, and no open storage shall be permitted detrimental to the appearance of such a center."

"The grantee herein by acceptance of this deed agrees for itself and its successors in title to the granted premises not to use . . . [the] access road [to the industrial park] for the parking of vehicles."

activities on said lot 1, except those only as are necessary to dispose of excess products not sold or distributed through their normal wholesale or other non-retail selling operations." Other provisions limited the use of signs and parking.[4]

In early 1970 Pilgrim's assets were sold to Joseph De-Costa, Inc. (DeCosta), and all of the capital stock of Win-Burn was sold to the stockholders of DeCosta. (Pilgrim's operations on the premises appear to have then ceased.) DeCosta took possession of the premises, title to which remained in Win-Burn, and operated Pilgrim's business. Later in 1970 or in early 1971, it sublet the retail store to one Sullivan, who has since operated it.[5]

The plaintiffs contended that the defendants' use of the premises violated their covenants with respect to parking and maintenance of the property and that the sales in the retail outlet exceeded those permitted by the Restrictive Agreement. It sought an injunction enforcing those covenants. The master found that Win-Burn maintained sufficient facilities for parking, loading and unloading; that the street parking was limited to use contemplated by the parties and did not violate the agreement; that reasonable care was exercised in maintaining the exterior appearance of the premises; and that temporary outside storage of wooden pallets on which meat supplies were delivered (before those pallets were picked up by a sanitation company)

---

[4] Those provisions read: "They, their successors and assigns shall not for such thirty-year period erect or maintain on said lot 1 any sign, permanent or temporary, which is visible from the outside of any building thereon and which advertises the conduct of any retail selling activity.

"They, their successors and assigns shall for such thirty-year period use all efforts available to them to cause their employees and all other persons within their control, including visitors, to cease and refrain from parking vehicles on Forbes Road or on Cedar or Washington Streets, all as shown on said plan.

"They, their successors and assigns shall not make any use of said lot 1 which requires or is reasonably expected to attract parking, loading or unloading in excess of the capacity of the facilities maintained therefor on the premises, without using streets therefor."

[5] Neither DeCosta, its stockholders, nor Sullivan were made defendants in this proceeding.

was not detrimental to the appearance of the industrial park. With respect to the retail business, the master found that the retail store conducted $100,000 in annual gross sales at an annual cost of goods sold of approximately $75,000. He further found that prior to executing the Restrictive Agreement limiting retail sales the parties contemplated that the sale of "processed meats, cheeses, olives and sandwiches" would continue and that it was reasonable and necessary to have condiments for the sandwiches available for sale. He also found the sale of soft drinks "reasonably incidental to and necessary for the successful sale of the sandwiches and meats which are authorized to be sold under the Restrictive Agreement."

The master reached the following ultimate conclusions: (1) that the bill should be dismissed as to Pilgrim since it no longer occupied the premises or continued to violate the agreement; (2) that there were no violations of the restrictive covenants contained in the 1962 deed; (3) that Win-Burn violated the retail sales agreement by reason of the sale of "newspapers, cookies, instant breakfast preparations, cheese dips, gelatins, and cigarettes"; (4) that the display of signs describing products for sale in the store or indicating that a retail store was located there violated the agreement, and (5) "[u]nless as a matter of law the change of ownership in the capital stock of ... [Win-Burn] may not be considered as a factor for such purposes, ... that by having knowledge of all of the retail activities on the premises since at least April of 1967, and by failing to take any reasonably prompt action to stop such activities, the plaintiffs have impliedly represented to the new owner of such stock that the continuation of such retail activities would be permitted." That last ultimate conclusion apparently embraced the defendants' affirmative defenses of laches and estoppel. The judge adopted the master's report over the plaintiffs' objections and, apparently on the basis of laches or estoppel, dismissed the bill.

The plaintiffs contend on appeal that the dismissal of the bill was improper as there was no basis for the finding of laches or estoppel, and we agree.

In reviewing the master's ultimate conclusion numbered (5) above, which was drawn solely from his subsidiary findings, it is our duty to draw our own inferences and reach our own conclusions from those findings. *Jones* v. *Gingras*, 3 Mass. App. Ct. 393, 395-396 (1975). The defense of laches must be affirmatively demonstrated, not by a mere showing that the plaintiffs delayed in the assertion of rights but by a positive showing that any such delay operated to prejudice the defendants. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36 (1910). *Three Sons, Inc.* v. *Phoenix Ins. Co.* 357 Mass. 271, 278 (1970). *Erickson* v. *Waltham*, 2 Mass. App. Ct. 436, 450-451 (1974). The only subsidiary finding of the master relevant to the defense of laches was that "the plaintiffs have at all times been aware of the nature and extent of the retail activities on the premises." The reference in the last quoted ultimate conclusion to an implied representation to DeCosta that the plaintiffs would tolerate a full range of retail activities carried on in the store has no support in the subsidiary findings. Even if such a conclusion were correct, it would not support a defense of laches. There is no showing that any of the defendants at any time relied to their detriment on any such representation nor that DeCosta did so when purchasing the stock of Win-Burn or the assets of Pilgrim. Any claim of detrimental reliance by Win-Burn or De-Costa is belied by the inclusion of language in the sublease of the retail store to Sullivan making it subject to the Restrictive Agreement and by the more recent closing of the retail operation.[6] The defendants are thus not entitled to

---

[6] The defendants submitted a motion to dismiss the complaint in this court, alleging that the appeal was moot since they voluntarily ceased to conduct retail operations. We ordered that the motion be heard at the arguments on appeal before the sitting panel. While we need not reach the issue of mootness as the defendants have failed to argue it, we are of the opinion that the assertion by the defendants that the full range of retail business complained of by the plaintiffs is no longer carried on does not moot the case, as the packing business to which the restriction applies is ongoing. The plaintiffs are entitled to an injunction appropriately limiting the retail activities that may be conducted under these restrictive agreements.

benefit from the plaintiffs' delay in enforcing these restrictions. "[O]ne, who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as a bar failure to take the most instant conceivable resort to the courts." *Stewart* v. *Finkelstone,* 206 Mass. 28, 36 (1910).

As the parties have briefed and argued the issue, we offer for guidance of the court on remand our opinion as to the proper construction of the Restrictive Agreement as to retail sales. The Restrictive Agreement limits retail sales to "those . . . necessary to dispose of excess products not sold or distributed through their normal wholesale or other non-retail selling operations." The master's "finding" that this language encompasses selling of sandwiches and other products reasonably incidental to such sales is clearly wrong. The agreement refers unambiguously to a factory outlet type of sales operation, not to a delicatessen or sandwich shop. The "contemplation" of the parties referred to in the master's finding is not material where the agreement is unambiguous. *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass. 99, 106 (1962). The only sales authorized by the Restrictive Agreement are sales of excess products of DeCosta's wholesale operation.

The dismissal of the complaint as to Pilgrim was correct for the reasons found by the master. The master's finding (4), *supra,* as to signs has not been contested.

The plaintiffs' remaining contention, essentially that the master's subsidiary findings regarding the agreements and covenants concerning parking and the maintenance of the premises were incorrect, is without merit. Those findings are neither inconsistent nor plainly wrong. They must, therefore, be upheld on appeal. *Jones* v. *Gingras,* 3 Mass. App. Ct. 393, 395 (1975).

The judgment is reversed, and the case is remanded to the Superior Court for the entry of a new judgment consistent with this opinion.

*So ordered.*