USCA1 Opinion

 

 October 7,1992 _________________________ No. 92-1344 FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee, v. PRITAM SINGH, ET AL., Defendants, Appellants. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ _________________________ Before Selya and Stahl, Circuit Judges, ______________ and Skinner,* District Judge. ______________ _________________________ Elizabeth G. Stouder, with whom John S. Whitman, Richardson ____________________ _______________ __________ & Troubh, Allen J. Hrycay, and Reef, Jordan, Hrycay & Sears were _________ _______________ ____________________________ on brief, for appellants. Thomas A. Cox, with whom Mary Ann E. Rousseau and Friedman & _____________ ____________________ __________ Babcock were on brief, for appellee. _______ _________________________ _________________________ _______________ *Of the District of Massachusetts, sitting by designation. SELYA, Circuit Judge. In this case, the district court SELYA, Circuit Judge. _____________ granted summary judgment on a guaranty in favor of the Federal Deposit Insurance Corporation (FDIC).1 The guarantors appeal. We affirm the judgment below because, as a matter of law, the guaranty was free of ambiguity and the plaintiff was entitled to summary enforcement. See, e.g., Garside v. Osco Drug, Inc., 895 ___ ____ _______ _______________ F.2d 46, 48-49 (1st Cir. 1990) (appellate court may affirm a grant of summary judgment on any independently sufficient ground reflected in the record). I. BACKGROUND I. BACKGROUND On December 23, 1985, Bandon Associates, a general partnership, executed and delivered a promissory note (the 1985 Note) in the principal amount of $1,050,000 to Patriot Bank, N.A. As collateral, Bandon gave the bank a mortgage on property it held in Maine. Both the 1985 Note and the mortgage deed were signed on Bandon's behalf by the four appellants as Bandon's sole general partners. The quartet also executed and delivered, on the same date, an unconditional guaranty of Bandon's obligations (the Guaranty). By the terms of that document, the signers "jointly and severally . . . unconditionally guarantee[d]" all liabilities of Bandon Associates to Patriot Bank "now existing or hereafter arising, regardless of how they arise or by what ____________________ 1By statute, cases in which the FDIC is a party are ordinarily deemed to "arise under" the laws of the United States. See 12 U.S.C. 1819(b)(2)(A) (Supp. II 1990). Hence, the ___ district court possessed federal question jurisdiction pursuant to 28 U.S.C. 1331 (1988). In turn, we have appellate jurisdiction under 28 U.S.C. 1291 (1988). 2 agreement or instruments they may be evidenced . . . ." The Guaranty did not refer specifically to the 1985 Note. On April 6, 1987, Bandon entered into a written agreement (the Agreement) with Patriot Bank to revise the terms of the 1985 loan. The arrangement involved substituting a new note (the 1987 Note) for the old note. The 1987 Note was in the same face amount, but provided for a fixed interest rate, an amortization schedule, and a prepayment penalty. It was signed by the four appellants on Bandon's behalf and "individually." It also contained an assurance that the Bank would "look solely to its [c]ollateral for satisfaction of the [o]bligations of Borrower or under any documents or undertaking given as security herefor and not to the personal assets of any partner, General or Limited." At the same time, Bandon and Patriot jointly executed an emendatory instrument (the Amendment) which tied the security instruments into the 1987 Note, reaffirmed them, and stated that: "The Mortgage, the Assignment, the Guaranty, and the Financing Statement . . . shall remain in full force and effect and all the terms thereof are hereby ratified and confirmed, by the parties hereto." Although Bandon and its principals were represented by counsel, the bank's lawyers were the chief architects of the documents. Soon thereafter, Patriot Bank merged with Bank of New England (BNE). On January 6, 1991, the Comptroller of the Currency determined that BNE was insolvent and appointed the FDIC as receiver. The New Bank of New England (NBNE) was created, 3 chartered, and duly designated as a bridge bank. The lender's rights material to the Patriot/Bandon transactions were assigned, in relatively rapid succession, from Patriot to BNE and, eventually, to NBNE. Meanwhile, Bandon was unable to meet its payment obligations under the 1987 Note. On February 13, 1991, NBNE commenced a civil action to foreclose the mortgage in the United States District Court for the District of Maine. It simultaneously brought an action against the appellants, as individuals, alleging that each of them was liable under the Guaranty for Bandon's default. While the cases were pending, the FDIC dissolved NBNE and, as receiver, became the substitute plaintiff in both actions.2 In time, the district court granted the FDIC's dispositive motion in the guaranty action, invoking the D'Oench, ________ Duhme doctrine, see D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, _____ ___ ____________________ ____ 460 (1942), and the statute that largely codifies the doctrine.3 ____________________ 2The district court thereafter granted the FDIC's motion for summary judgment in the foreclosure action. Bandon has not appealed from that order. We need not dwell upon it. 3The statute provides in pertinent part: No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan . . . or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement (1) is in writing, 4 This doctrine defines the limited conditions under which agreements may validly diminish or defeat the FDIC's interest in an asset it acquires. II. A THUMBNAIL SKETCH II. A THUMBNAIL SKETCH Appellants theorize that the non-recourse provision in the 1987 Note conflicts with both the Guaranty and the reaffirmation of the Guaranty; and that, under applicable law, the conflict should be resolved in favor of the 1987 Note. In their view, the judgment below should be reversed or, alternatively, vacated and the case remanded for trial regarding the effect of the non-recourse provision.4 ____________________ (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution. 12 U.S.C. 1823(e) (Supp. II 1990). We set forth the current version, including the 1989 amendments, see Pub. L. No. 101-73, ___ 103 Stat. 183, 256 (1989), as those amendments were comparatively minor and do not impact upon the case before us. 4Appellants' alternative argument seemingly reflects the possibility that, if the instruments are not in direct conflict, they are at least ambiguous. 5 The yardstick by which we must measure the cogency of appellants' contentions is not in doubt. "Summary judgment is appropriate when the record reflects 'no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" Rivera-Muriente v. Agosto-Alicea, 959 F.2d _______________ _____________ 349, 351 (1st Cir. 1992) (quoting Fed. R. Civ. P. 56(c)). When, as here, the district court has cranked up the machinery of Rule 56, and disposed of a case on that basis, appellate review is plenary. See Allen v. Adage, Inc., ___ F.2d ___, ___ (1st Cir. ___ _____ ___________ 1992) [No. 91-2206, slip op. at 8]; Garside, 895 F.2d at 48. _______ Although a dispute over the meaning of a contract is often a dispute about a material fact, summary judgment is not necessarily foreclosed in such a situation. See Allen, ___ F.2d ___ _____ at ___ [slip op. at 6]. In some circumstances, "[t]he words of a contract may be so clear themselves that reasonable people could not differ over their meaning." Boston Five Cents Sav. Bank v. ____________________________ Secretary of Dep't of HUD, 768 F.2d 5, 8 (1st Cir. 1985). This _________________________ is such an instance: here, long-standing principles of Massachusetts contract law compel us to conclude that the non- recourse provision in the 1987 Note neither trumps the plain language of the Guaranty nor creates an ambiguity in the contract documents. III. ANALYSIS III. ANALYSIS We begin by reviewing applicable state law. We then apply that law, explain how federal law is supportive of the result that we reach, and address appellants' remaining counter- 6 arguments. A. A. __ The instruments at issue here state that they are to be governed by, and construed in accordance with, the law of Massachusetts. Under Massachusetts law, when several writings evidence a single contract or comprise constituent parts of a single transaction, they will be read together. See Chelsea ___ _______ Indus., Inc. v. Florence, 260 N.E.2d 732, 735 (Mass. 1970); see ____________ ________ ___ also Ucello v. Cosentino, 235 N.E.2d 44, 47 (Mass. 1968) (holding ____ ______ _________ that the parties' intent "must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part"); Chase Commercial Corp. v. Owen, 588 ______________________ ____ N.E.2d 705, 707 (Mass. App. Ct. 1992) (construing a guaranty and contemporaneous loan and security agreements as part of one transaction and reading them together despite the fact that the guaranty did not incorporate the other documents by reference). "The question of whether a contract term is ambiguous is one of law for the judge." Allen, ___ F.2d at ___ [slip op. _____ at 6]; accord Boston Five Cents Sav. Bank, 768 F.2d at 8; ______ ______________________________ Jefferson Ins. Co. v. Holyoke, 503 N.E.2d 474, 476 n.4 (Mass. __________________ _______ App. Ct.), rev. denied, 506 N.E.2d 146 (Mass. 1987). A contract ____ ______ is not ambiguous simply because litigants disagree about its proper interpretation. See Papago Tribal Util. Auth. v. FERC, ___ __________________________ ____ 723 F.2d 950, 955 (D.C. Cir. 1983), cert. denied, 467 U.S. 1241 _____ ______ (1984). Rather, a contract, or a set of documents which in the ensemble comprise a contract, is considered ambiguous only when 7 the language "is reasonably prone to different interpretations." Fowler v. Boise Cascade Corp., 948 F.2d 49, 54 (1st Cir. 1991). ______ ___________________ Stated another way, contract language which "is susceptible to differing, but nonetheless plausible, constructions . . . is ambiguous." Allen, ___ F.2d at ___ [slip op. at 12]; see also _____ ___ ____ Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st ____________________ _____________ Cir. 1989). B. B. __ Notwithstanding appellants' unremitting effort to overshadow the Guaranty by a single-minded focus on the 1987 Note's non-recourse provision, we discern no ambiguity here. The non-recourse provision unequivocally refers to the "Obligations of Borrower," namely, Bandon, and to the "personal assets of any ________ partner." (Emphasis supplied.) The status of guarantor is _______ obviously not implicated either by the word "Borrower" or by the allusion to "any partner." Any mention of, or reference to, the appellants qua guarantors is conspicuously lacking. ___ On the other hand, the language of the Guaranty is plain as a pikestaff. The signatories "unconditionally guarantee[d]" all liabilities "now existing or hereafter arising." Nothing in the document package indicates that the parties later intended to nullify the Guaranty or to restrict its sweep. Indeed, the parties took pains in the 1987 Amendment to reaffirm the Guaranty, thus leaving it in full flower. We believe that, by executing the Guaranty in addition to the partnership obligation, and by thereafter reaffirming it in 8 conjunction with the loan rewrite, the appellants incurred liability in two separate and distinct capacities. Cf., e.g., ___ ____ Fred T. Ley & Co. v. Sagalyn, 19 N.E. 2d 687, 689 (Mass. 1939) __________________ _______ (upholding personal liability of trustees who also signed guaranty of trust obligations as individuals). In an effort to stem this inexorable tide, appellants invite us to infer a construction that would render an express clause in the documents nugatory. Such an invitation flies in the teeth of Massachusetts law, which directs courts to give reasonable effect to each provision of an agreement wherever feasible. See J.A. Sullivan Corp. v. Commonwealth, 494 N.E. 2d ___ ____________________ ____________ 374, 378 (Mass. 1986); McMahon v. Monarch Life Ins. Co., 186 _______ _______________________ N.E.2d 827, 830 (Mass. 1962). "It is a canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible." Tupper v. Hancock, 64 ______ _______ N.E.2d 441, 443 (Mass. 1946) (citation omitted). Because appellants' reading of the documents would render the Guaranty and the reaffirmation of it surplusage and would do so in the utter absence of any manifest necessity for so drastic an outcome5 we cannot accept it. Moreover, Massachusetts law embraces the maxim ____________________ 5There are, of course, sound business reasons why a borrower might want to free prospective partners from personal liability even though existing partners remain liable as guarantors. To cite but one example, doing so would obviously enhance the partnership's ability to attract new partners to the venture, and thus, to secure an infusion of fresh capital. 9 "expressio unius est exclusio alterius." Chatham ________________________________________________ _______ Pharmaceuticals, Inc. v. Angier Chem. Co., 196 N.E.2d 852, 854-55 _____________________ ________________ (Mass. 1964). That maxim applies as forcibly to exceptions to an obligation as to enumerations of the objects embraced by a contract. See id. Here, the Amendment lists a number of ___ ___ particular alterations in the security instruments without once mentioning a nullification or diminution of the liabilities assumed under the Guaranty. In these circumstances, the parties' failure to provide expressly for modification of the Guaranty leaves us no choice but to give effect to the Guaranty's provisions. Courts should not attempt to "accomplish by judicial fiat what [a party] neglected to achieve contractually." RCI ___ Northeast Servs. Div. v. Boston Edison Co., 822 F.2d 199, 204 _____________________ __________________ (1st Cir. 1987). To recapitulate, the non-recourse provision limits the liabilities incurred under the 1987 Note by the appellants acting as partners of Bandon Associates; it does not limit the separate and distinct liabilities incurred by the appellants in their capacities as guarantors. Taken as a whole, there is no ambiguity; the documents are susceptible only to one plausible construction. Hence, appellants' suggestion that they intended the non-recourse provision to qualify the Guaranty is irrelevant. See, e.g., Fairfield 274-278 Clarendon Trust v. Dwek, ___ F.2d ___ ____ __________________________________ ____ ___, ___ (1st Cir. 1992) [No. 91-1729, slip op. at 6-7] (refusing to subrogate an unambiguous contract provision to the supposed contemplation of the parties; applying Massachusetts law); 10 Appalachian Power Co. v. FPC, 529 F.2d 342, 348 (D.C. Cir.) _______________________ ___ (stating that a party may not "reach outside . . . unambiguous contracts for an argument seeking to impart uncertainty"), cert. _____ denied, 429 U.S. 816 (1976); Blakeley v. Pilgrim Packing Co., 340 ______ ________ ___________________ N.E.2d 511, 514 (Mass. App. Ct. 1976) (similar). C. C. __ The continued enforceability of the Guaranty, according to its tenor, is not only dictated by state law and by the incidence of clear and unambiguous language; it is also suggested by the spirit, if not the letter, of the D'Oench, Duhme _______________ doctrine.6 As we have said, appellants' basic thesis is that the non-recourse provision of the 1987 Note implies an intent to defenestrate the Guaranty. We think that nullification by implication transgresses the principles animating the D'Oench, ________ Duhme doctrine, both in its common law and statutory variants. _____ That doctrine is designed to "help the FDIC accurately and speedily determine an insolvent bank's value." Bateman v. FDIC, _______ ____ ___ F.2d ___, ___ (1st Cir. 1992) [No. 91-1832, slip op. at 12]; accord Commerce Federal Sav. Bank v. FDIC, 872 F.2d 1240, 1245 ______ __________________________ ____ (6th Cir. 1989). The doctrine requires that agreements which would diminish or defeat the FDIC's interest in any asset acquired by it must fulfill certain requirements. See supra note ___ _____ ____________________ 6While we agree with our concurring brother that appellants failed to demonstrate either board or loan committee approval of any modification of guarantor liability, we believe that the case is satisfactorily resolved on the grounds previously discussed, and it is, therefore, unnecessary for us to consider the further potential ground for affirming summary judgment upon which Judge Skinner rests his separate opinion. 11 3. By making the value of bank assets readily apparent, these requirements aid the FDIC in fulfilling its mission. "[I]t is important that FDIC officials, examining the insolvent bank's documents, feel they can rely, for valuation purposes, upon the bank's documents as meaning what they say." Bateman ___ F.2d at _______ ___ [slip op. at 12]. Guaranty obligations are assets of the FDIC within the meaning of 12 U.S.C. 1823(e). See FDIC v. Virginia Crossings ___ ____ __________________ Partnership, 909 F.2d 306, 312 (8th Cir. 1990); FDIC v. P.L.M. ___________ ____ ______ Int'l, Inc., 834 F.2d 248, 253 (1st Cir. 1987). To allow the ___________ non-recourse provision inserted in the 1987 Note to nullify the Guaranty by implication, when the non-recourse language appears in a document separate from the asset in question and when its plain words on the surface suggest a far more limited aim, would undercut the principle that FDIC officials should be able to assess the value of an insolvent bank's assets from the "official record[s] of the depository institution." 12 U.S.C. 1823(e)(4). Appellants' proffer of extrinsic evidence to demonstrate the parties' ostensible intentions falls victim to many of the same considerations. Such evidence, not visible to FDIC officials on the face of the documents to which they must refer in determining the value of assets they have acquired, should not, under the D'Oench, Duhme rationale, be permitted to ______________ contribute covertly to the diminution of these assets. See FDIC ___ ____ v. Merchants Nat. Bank, 725 F.2d 634, 637 (11th Cir.) (noting ____________________ 12 that the district court "correctly applied Sec. 1823(e) to exclude as irrelevant any evidence not found in the records of the bank and not meeting the statute's strict requirements"), cert. denied, 469 U.S. 829 (1984); FDIC v. Cardinal Oil Well _____ ______ ____ __________________ Servicing Co., 837 F.2d 1369, 1372 (5th Cir. 1988) (refusing to _____________ considerexternalevidencethat didnotmeet 1823(e)'s requirements).7 D. D. __ Appellants advance three additional asseverations. None of them suffices to carry the day. First, using prior U.C.C. 3-119 as a springboard, and noting that Massachusetts has adopted the Uniform Commercial Code, see Mass. Gen. Laws. Ann. ch. 106 (West 1990), appellants ___ urge that, since a direct contradiction exists between the 1987 Note and the Guaranty, the former, being a negotiable instrument, should be given effect.8 The fly in the ointment is huge: ____________________ 7Reliance upon extrinsic evidence is also inappropriate in light of the longstanding common law rule that where, as here, the contract is unambiguous, extrinsic evidence as to the meaning of terms and the intent of the parties should not be considered. See, e.g., Fairfield, Etc. Trust, ___ F.2d at ___ [slip op. at ___ ____ ______________________ 6]; Cardinal Oil, 837 F.2d at 1371; Papago Tribal, 723 F.2d at _____________ _____________ 955; Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, _______________________________________ ________________ 577 N.E.2d 283, 289 (Mass. 1991); Blakeley, 340 N.E. 2d at 514. ________ 8The language that appellants most cherish is contained in comment 3: If there is outright contradiction between [a separate writing and a negotiable instrument], as where the note is for $1,000 but the accompanying mortgage recites that it is for $2,000, the note may be held to stand on its own feet and not to be affected by the contradiction. U.C.C. 3-119 comment 3 (1964). While the corresponding section 13 appellants' exhortation is completely dependent upon the existence of an "outright contradiction" between the 1987 Note and the Guaranty and we see none. To the exact contrary, there is a perfectly natural reading which reconciles the documents and renders them internally consistent. Thus, the law of Massachusetts demands that we harmonize the clauses rather than strain to create an imaginary conflict between the non-recourse provision and the reaffirmation of the Guaranty. See Truck ___ _____ Drivers, Local 42 v. International Bhd. of Teamsters, 482 F. __________________ _________________________________ Supp. 266, 271 (D. Mass. 1979) (preferring to read contract clauses as if they are not in conflict if such an interpretation is reasonably possible); McMahon, 186 N.E.2d at 830 ("[A] _______ contract is to be construed to give a reasonable effect to each of its provisions if possible."). Next, appellants claim that the loan documents should be construed against the FDIC because the lender drafted them. But, this argument is a mere heuristic. Documents should be construed against the drafter only when the questioned language, together with the circumstances surrounding its use, creates some cognizable uncertainty as to intended meaning. See Merrimack ___ _________ Valley Nat'l Bank v. Baird, 363 N.E.2d 688, 690 (Mass. 1977); _________________ _____ Aldrich v. Bay State Constr. Co., 72 N.E. 53, 54 (Mass. 1904); _______ ______________________ see also Shea v. Bay State Gas Co., 418 N.E.2d 597, 602 (Mass. ___ ____ ____ __________________ ____________________ of revised Article 3 (adopted after the documents at issue here were drafted) does not retain this comment, see U.C.C. 3-117 ___ (1990), the prior version still persists in the Commonwealth. See Mass. Gen. Laws Ann. ch. 106, 3-119. ___ 14 1981) (stating that the rule of construction against the drafter "must give way to the primary and inflexible rule that . . . contracts . . . are to be construed so as to ascertain . . . the true intention of the parties") (citation omitted). In the absence of ambiguity, non-drafters gain no special advantage. Appellants' last argument completely contradicts their original premise. Having unsuccessfully maintained that the 1987 Note and the Guaranty are irreconcilably inconsistent with one ____________ another, they shift gears in their reply brief, maintaining, for the first time, that the two documents are unnecessarily duplicative (in other words, consistent with one another). To __________ this end, they cite Seronick v. Levy, 527 N.E.2d 746, 749 (Mass. ________ ____ App. Ct.), rev. denied, 530 N.E.2d 797 (Mass. 1988), for the ____ ______ broadcast proposition that, where the makers of a note also sign as guarantors, the guaranty is surplusage and, hence, unenforceable. Because appellants signed both the 1987 Note and the Guaranty, they argue, the Guaranty is excess baggage and the FDIC cannot proceed against them under it. The facts of this case fail to support such an overgeneralized argument. Because the Guaranty operates to hold appellants individually responsible for Bandon's liabilities to the mortgage lender while the 1987 Note blocks recourse to the personal assets of partners other than the appellants, the Guaranty is hardly surplusage. Moreover, the Guaranty is 15 significantly broader than the 1987 Note in certain respects.9 We offer two examples. (1) The Guaranty does not refer to the repayment of any specific liability in any specific time period, but rather was clearly meant to secure any liability running from ___ Bandon to the bank. Stated another way, the obligation undertaken under the Guaranty is not bounded by the term of the 1987 Note or any specific note, for that matter. (2) The Guaranty, unlike the 1987 Note, also obligates the guarantors to deliver additional collateral, presumably from personal assets, "at such time or times as the [lender] may deem itself to be insecure." These dissimilarities adequately evince that the Guaranty is not surplusage by any stretch of the most active imagination. Cf. Ligran, Inc. v. Medlawtel, Inc., 432 A.2d 502, ___ ____________ _______________ 505-06 (N.J. 1981) (holding that although a guaranty is often surplusage when a maker also signs as guarantor, in certain limited and unusual situations, a maker may enlarge the scope, if not the duration, of liability by signing as a guarantor).10 ____________________ 9In other respects, however, the Guaranty is slightly narrower than the 1987 Note. For example, the Guaranty, unlike the 1987 Note, specifically contemplates possible revocation by one or more of the guarantors. 10To be sure, certain states have laws that prohibit or limit deficiency judgments after foreclosure. To enforce the policies behind these statutes, courts have frowned on post- foreclosure deficiency judgments against guarantors who were also makers. See, e.g., Westinghouse Credit Corp. v. Barton, 789 F. ___ ____ _________________________ ______ Supp. 1043, 1046 (C.D.Cal. 1992) (non-recourse nature of loan to partnership did not separate guarantor from his normal status as partner and principal obligor so as to make him a true guarantor outside the protection of California anti-deficiency law); First _____ Interstate Bank v. Larson, 475 N.W.2d 538, 542-44 (N.D. 1991) _______________ ______ (distinction between obligors' joint liability as partners and their joint and several liability as individual guarantors must 16 IV. CONCLUSION IV. CONCLUSION We need go no further. Where, as here, a "transaction is commercial, the principals practiced and represented by counsel, and the contract itself reasonably clear, it is far wiser for a court to honor the parties' words than to imply other and further promises out of thin air." Mathewson Corp. v. Allied _______________ ______ Marine Indus., Inc., 827 F.2d 850, 856 (1st Cir. 1987) (applying ____________________ Massachusetts law). On that basis, we are fully satisfied that we should not venture to rewrite the lender/borrower/guarantor agreements that underlie this controversy. We are equally satisfied that, as written, the agreements are clear and unambiguous. Construed according to their tenor, they warrant summary judgment in the FDIC's favor. Affirmed. Affirmed. ________ Concurrence Follows ____________________ give way to the force of North Dakota's anti-deficiency law). Massachusetts, however, has no such policy. See Mass. Gen. Laws ___ Ann. ch. 244, 17B (West 1988). Accordingly, we are particularly reluctant to strip a bona fide guaranty of its intended effect. 17 SKINNER, District Judge, concurring. I concur in the court's judgment, but write separately because I am unable to accept the court's conclusion that there is in fact no conflict between the 1987 Note and the Guarantee. In my view this issue should not be resolved without an evidentiary hearing. The result adopted by the court can be reached by a different route, however. Congress opted for certainty when it enacted the categorical recording scheme embodied in 1823(e). Langley v. __________ FDIC, 484 U.S. 86, 95 (1987). The scope of a court's inquiry ____ into the enforceability of an agreement is limited, and the court's conclusion depends entirely on the agreement's compliance or noncompliance with the statute. See id. at 94-95. The ___ __ statute provides that any agreement that "tends to diminish or defeat the interest of the [FDIC] in any asset acquired" as receiver is invalid against the FDIC, unless the agreement: (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution. 12 U.S.C.A. 1823(e). In this case, the district court concluded correctly that the 1985 Guaranty was an "asset" of the FDIC within the meaning of 1823(e). FDIC v. Virginia Crossings Partnership, 909 F.2d 306, _______________________________________ 312 (8th Cir. 1990); FDIC v. P.L.M. Int'l, 834 F.2d 248, 253 (1st ____________________ Cir. 1987). Therefore, in order to defeat or impair the 18 Guaranty, the appellants had the burden of demonstrating that the 1987 Agreement and purported release complied with each of the four requirements of 1823(e). FDIC v. Rivera-Arroyo, 907 F.2d _____________________ 1233, 1236 (1st Cir. 1990); P.L.M. 834 F.2d at 253. _____ The statute, among other things, requires both that the board or loan committee approve the agreement and that such approval be reflected in the minutes of the board or committee meeting. 12 U.S.C. 1823(e)(3). Absent evidence of such approval, the agreement is unenforceable against the FDIC. P.L.M., 834 F.2d at 253; FDIC v. Eagle Prop., 664 F. Supp. 1027, _____ __________________ 1051 (W.D. Tex. 1985) (holding subordination certificate unenforceable in spite of general board authorization because minutes do not specifically approve the certificate); FDIC v. _______ Gardner, 606 F. Supp. 1484, 1488 (S.D. Miss. 1985) (side _______ agreement not referenced or affirmatively and directly acknowledged is unenforceable). The record is devoid of evidence supporting appellants' contention that the board or loan committee approved a release or modification of the guarantors' liability. At oral argument, appellants conceded that they could point to no document and no affidavit to demonstrate the requisite approval. But the record is not silent on this issue. Indeed, far from reflecting a purported release, both the Loan Committee Minutes and the Loan Approval Sheet indicate precisely the opposite understanding: they refer to the four appellants, by name, as "guarantors" of the new Note. Moreover, the record demonstrates that the continuing personal guaranties of the appellants were significant factors in approving the loan. A risk analysis report, attached 19 to the loan approval sheet, twice mentions the "strength" of the appellants' personal guaranties as mitigating risk factors. It is clear that no release of personal liability was authorized. There is no genuine issue of material fact and the FDIC is entitled to judgment as a matter of law. I therefore join in affirming the judgment of the district court. 20