**FIDELITY FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, and Home Savings & Loan Association, a corporation, Plaintiffs,**

v.

**PIONEER NATIONAL TITLE INSURANCE COMPANY, a California Corporation, Defendant.**

**No. P–CIV–76–36.**

United States District Court, S. D. Illinois, N. D.

April 7, 1977.

John J. Blake, Richard J. Neagle, Jr., Galesburg, Ill., Lyle W. Allen, Peoria, Ill., for plaintiffs.

Eugene L. White, Peoria, Ill., R. Richard Straub, St. Louis, Mo., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

The plaintiffs are two savings and loan associations, doing business at Galesburg, Illinois, in this district. The defendant is a title insurance company, incorporated under the laws of the State of California. The cause is now before the court on cross-mo-

tions for summary judgment. It is necessary, at the outset, to frame a proper context of the complaint to see both what the suit is and is not.

The complaint makes reference to several contractual relationships which were created at about the same time, although the defendant is a party to only one of such contracts.

On July 31, 1974, the plaintiffs concluded loan agreements under which each of them agreed to loan to Galesburg Motor Lodge, Inc., a corporation, hereinafter GML, the sum of $862,500 for the construction in downtown Galesburg, Illinois, of a Howard Johnson Motor Lodge. Such loans were evidenced by promissory notes secured by mortgages upon the real estate involved and the proposed improvements. Those notes and mortgages were executed by GML. The notes were also executed, individually, by divers persons who were associated with that corporation. The defendant was not a party to. any of such notes or mortgages.

At about the same time, GML had entered into a construction contract with Galesburg Construction Co., Inc. for the construction of the contemplated structure. The defendant was not a party to the construction agreement.

On July 31, 1974, defendant entered into a construction and disbursing escrow agreement with the plaintiffs and GML. Pursuant to that agreement, in which GML, as owner, covenanted to complete construction on or before December 31, 1975, defendant assumed certain obligations, including that of escrowee and disbursing agent for funds for the contemplated construction. That agreement further provided that in the event the owner should fail to complete construction as contemplated, defendant might "either" complete the improvements substantially in accordance with the agreement "or, at its election," purchase the outstanding notes and mortgages from the plaintiffs.[1]

Construction of the motel premises was halted about October 14, 1975, when certain subcontractors and suppliers abandoned the project. By early December 1975, mechanics' liens aggregating in excess of $800,000 were filed against the premises. Thereafter, agents of defendant met with agents of the plaintiffs and agents of the prime contractor. Such contacts culminated in a determination by defendant to settle the outstanding lien claims and to complete construction. Accordingly, it entered into a contract with Galesburg Construction for completion of the project. Completion, as contemplated by the provisions of the latter contract, was substantially accomplished by about September 15, 1976.

In the interim period, on April 21, 1976, this complaint was filed. Count I of the complaint, after alleging the corporate identities of the parties, and the fact that the mortgage notes are unpaid and in default, seeks a judgment against defendant for the principal balance of said notes, plus plaintiffs' accrued interest, expenses, and costs and attorneys' fees. The theory of that count is that the defendant, under the

---

1. Paragraph 21 of the CDE Agreement provides in its entirety:

   That Escrowee does not guarantee completion to Owner or Contractor. Should Owner and Contractor fail to complete in accordance with the terms hereof, Escrowee may either complete improvements substantially in accordance with plans and specifications to fulfill its obligations to Mortgagee (provided it is not prevented from so doing by war, national emergency or strikes) or, at its election, may purchase Mortgagee's notes and mortgage by paying to Mortgagee all sums then due it under said instruments. Thereupon, Mortgagee shall endorse (without recourse) and deliver said notes and assign the mortgage to the Escrowee. Escrowee shall have a lien against the property and improvements for amounts expended by it to complete, such lien to be subordinate only to the lien of the mortgage, and shall have the right to proceed in any other manner, in law or equity, to obtain reimbursement for amounts expended. The words "amounts expended", "any sums required for completion", and "all additional sums required" as used in this agreement, shall include, in addition to the sums expended for labor, materials and services, ten per cent (10%) of the total so expended as and for supervision.

CDE Agreement, became obligated, upon the default of GML, to either complete the structure "substantially" in accordance with the plans and specifications therefor, or to purchase the mortgage notes and mortgages from the plaintiffs; that defendant has breached the CDE Agreement in certain alleged particulars; that, implicitly, defendant became obligated upon the mortgage notes in the premises; and that plaintiffs are entitled "pursuant to the terms of the notes" to recover their costs, expenses and attorneys' fees.

Count II realleges the material allegations of Count I, adding only the allegation that defendant is a foreign corporation which has no assets "known to the plaintiffs" in Illinois, and that, therefore, plaintiffs have no adequate remedy at law. The count prays a judgment requiring defendant to purchase the notes and mortgages for the amount remaining due thereunder, including "attorneys' fees, costs, charges and disbursements."

Patently, breach of contract is not the theory of either count of the complaint. To the contrary, the theory of the complaint is that alleged breaches of the CDE Agreement by defendant would act either to obligate defendant on the mortgage notes themselves or to permit plaintiff to elect under the CDE Agreement to compel defendant to purchase the mortgage notes. The motions for summary judgment must be considered in that context.

■ The court is constrained to agree with the defendant's conclusion that plaintiffs' motion for summary judgment is, in fact, a device to defeat defendant's motion, not a serious assertion that plaintiffs are entitled to summary judgment. Thus, plaintiffs' motion and their arguments thereon are pointed to their positions that defendant permitted the misapplication of funds entrusted to it under the CDE Agreement, that in other particulars defendant did not perform its obligations under that agreement, and that there are some thirty-four respects in which the improvements as constructed do not comply with the plans and specifications in the original construction contract. Were this a suit for breach of a contract, which it is not, the premises stated for plaintiffs' motion clearly demonstrate that very substantial genuine issues of material fact would remain in the suit. In like measure, if the alleged breach of the CDE Agreement by defendant could have the effect of creating the legal and equitable rights for which plaintiffs contend in this complaint, those same questions of material fact would remain for decision. Plaintiffs' motion must, therefore, be summarily denied.

Defendant predicates its motion for summary judgment upon Count I, upon the admitted facts that defendant is not a signatory of the mortgage notes, and that it did not undertake under the CDE Agreement to become a guarantor of those notes. It urges that it cannot be held, as a matter of law, to be obligated to the plaintiffs upon the notes under the facts alleged in Count I.

■ Count I can only be construed as an attempt by plaintiffs to recover from the defendant upon the mortgage notes themselves.[2] It is a fundamental principle that no person is liable upon a written instrument unless his signature appears thereon. Ill.Rev.Stat.1975, c. 26, § 3–401(1); 12 Illinois Law and Practice *Contracts* § 261. Thus, defendant is not obligated upon those instruments, in the absence of some other written agreement to which it is a party and under which it assumed the obligation to become the guarantor of the payment of those instruments. Plaintiffs do not contend that defendant is a signatory upon any related instrument except the CDE Agreement. Plaintiffs concede, as they must, that defendant did not assume any obligation as guarantor of the notes under that agreement. As a matter of law, defendant is entitled to summary judgment on that count.

■ Count II of the complaint for specific performance rests upon equally infirm

2. The promissory notes are not attached as exhibits to the complaint.

ground. The equitable remedy of specific performance is not available, absent proof by plaintiffs that there is no adequate remedy at law available to them. *E. g., Linder v. Potier*, 409 Ill. 407, 410, 100 N.E.2d 602 (1951); 33A Illinois Law and Practice *Specific Performance* §§ 11, 109. Plaintiffs content themselves with alleging that specific performance should be granted because they "know" of no assets of defendant within the State of Illinois. They allege no facts tending to indicate that any loss which they have sustained would not be adequately compensated by a judgment for money damages. They ignore the existence of legal remedies available to them against GML and the other signatories on the notes and upon their security interest under their mortgages on the real estate. The essence of the prayer of their complaint is a demand for the payment of money, enwrapped in the guise of their specific performance theory. No viable basis for invoking equitable relief is alleged, and the cause might be disposed of on that basis alone.

Count II is also meritoriously infirm. Only paragraph 21 of the CDE Agreement relates to the rights of these parties in respect to the mortgage notes. That paragraph can only be read as vesting in the defendant the right to elect between alternative methods of its performance in the event of the default of GML. No other provision in the contract can be construed as limiting that right in any respect.

Defendant did elect to pursue the alternative course of completing the improvements, a fact which plaintiffs must concede. Yet they argue that defendant did breach the CDE Agreement in its manner of performance of the alternative elected, and in other respects, and that because of that breach by defendant, plaintiffs now have the right to elect to enforce the alternative mode of performance which defendant has already rejected by its own election. They cite no legal authority to support their obvious attempt to vary the express provisions of paragraph 21 of their agreement.

Thus the critical issue devolves into the question of the legal effect, as between the parties to a bilateral contract, of a provision in that contract which grants to one party the right to elect between alternative methods of performance. The applicable legal principle was pronounced by the Illinois Supreme Court more than 125 years ago. Speaking of a promissory note in the amount of $40, "which may be discharged in" corn at a stated price per bushel, the court said, "The right to have the note paid in money or corn was not left to the payee, but the makers reserved the privilege to themselves." *Borah v. Curry and Owen*, 12 Ill. 66, 68 (1850). Unless the right of election between alternative modes of performance of a contract is otherwise expressly restricted by the provisions of the contract itself, a promise to perform in one of alternative ways creates a right in the promisor to elect the alternative which he will pursue. *Sperry & Hutchinson Company v. Siegel, Cooper & Co.*, 309 Ill. 193, 200, 140 N.E. 864 (1923); *Metz v. Albrecht*, 52 Ill. 491, 497 (1869); 12 ILP *Contracts* § 236; 17 Am. Jur.2d *Contracts* § 363; *cf. Martindell v. Lake Shore Nat. Bank*, 15 Ill.2d 272, 145 N.E.2d 784 (1958).

A logical and necessary corollary of the principle that an alternative contract empowers the promisor to elect which alternative he will pursue is the conclusion that the act of election fixes the rights as between the parties. The promisee's right is limited to the right to have performance of the alternative elected. When an election has been made, "the contract ceases to be an alternative contract," 5 Corbin on Contracts § 1079, at p. 458, and the electing party is obligated to perform in accordance with the method of performance elected by him. 17 Am.Jur.2d *Contracts* § 364.

Although an alternative contract in the usual sense was not involved, *Martindell* has a pertinent analogy in this context. There the court held that a defeasible option, which was one provision of a broader, bilateral contract, became a fixed right upon the occurrence of the event for the

exercise of the option, and that the promisor could not thereafter defeat the right of the promisee to elect whether he would or would not exercise his contractual right. *Martindell v. Lake Shore National Bank, supra.*[3]

 In the situation before this court, the respective rights of the parties were fixed by the defendant's election between alternatives. Neither reason, logic, nor any precedent known to the court will support a theory that an alternative contract reverts to the rejected alternative upon proof of the breach by the promisor of the alternative elected by him. Plaintiffs cannot unilaterally rewrite their contract to further their own interests at defendant's expense. They bargained for alternative modes of performance at the option of defendant. They cannot now reclaim the right of election for themselves either because they are dissatisfied with the defendant's performance under the alternative which it did elect or because they would profit by a different alternative.

If it be assumed that plaintiffs do have a legal claim against defendant for breach of contract, the assumption neither obligates defendant on the GML notes nor creates in the plaintiffs the right to invoke the equity power of a court to assess, and enhance, their damages.

For the reasons stated, IT IS ORDERED that plaintiffs' motion for summary judgment is denied and summary judgment is entered for the defendant upon its motion on this complaint and for its costs.

---

3. The analogy between *Martindell* and the issue here is reflected in the following summary of the factual background of the *Martindell* complaint. In 1953, M entered into a complex contract with a Mr. and Mrs. S., who were the sole partners in an enterprise engaged in publishing Who's Who in America. Saliently, that contract provided that M would provide substantial financing for the continuation of that venture, that Mr. and Mrs. S would organize a corporation (Marquis-Who's Who, Inc.) which would be capitalized by the issuance of certain corporate debentures, each of which was pegged, by an arithmetic formula, to the shares of the corporation, and that certain of such debentures would be pledged as part of the security for plaintiff's loan.

The contract also provided that M might, at any time after ten years from the date of issuance of the debentures, elect to purchase not more than 67 per cent of such debentures, with a comparable percentage of the corporate shares. That option to purchase was conditioned by a provision that none of the debentures which had been paid and discharged by the corporation within the ten-year period would be subject to the option. Another provision provided that in the event of the death of Mr. S, the time of election accorded to M would be accelerated to the date of the appointment of a personal representative, and that the right to purchase could be exercised by him within six months thereafter.

Events related to the death of Mr. S on February 21, 1956, led to the litigation. On March 5, 1956, the following events occurred, in the sequence stated. The defendant bank was appointed administrator of Mr. S's estate. A meeting of the shareholders of the corporation, namely, Mrs. S and the bank, was held, at which the corporate management was restructured to replace Mr. S as Chairman of the Board and Chief Executive Officer. The newly constituted board of directors of the corporation met and adopted a resolution to redeem the outstanding debentures and, for that purpose, to accept a substantial loan of money from Mrs. S. A letter was directed to M advising him that the debentures would be redeemed and that his outstanding loan would be paid from a debenture redemption fund upon his surrender of the corporation's note and supporting documents.

On March 7, 1956, M notified the corporation, Mrs. S, and the administrator that he elected to exercise his option to purchase 67 per cent of the corporation. He filed his complaint for specific performance when those parties refused to honor his rights in the premises.

The court held that M was entitled to a decree for specific performance to enforce the contract. In that context, the court said that the condition that the option would not extend to bonds redeemed by the corporation had reference to bona fide redemptions made by the corporation in the normal course of business, and that it did not apply to corporate redemptions which were financed by the other contracting party with a purpose to defeat M's contractual rights. *Martindell v. Lake Shore National Bank*, 15 Ill.2d at 286, 145 N.E.2d 784.