THOMAS MOUHELIS *et al.*, Plaintiffs-Appellees, *v.* ROBERT J. THOMAS *et al.*, Defendants-Appellants.

Second District   No. 80-404

Opinion filed April 15, 1981.—Rehearing denied May 13, 1981.

Ashley S. Rose, of Fawell, James & Brooks, of Naperville, for appellants.

Richard W. Kuhn, of Naperville, for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendants, Robert and Elizabeth Thomas, appeal from an order of the circuit court of Du Page County granting the motion for summary judgment of plaintiffs Thomas Mouhelis and Lucinda Moores and entering judgment against the defendants.

On April 22, 1979, the parties entered into a contract for the sale of real estate at 726 Naperville Road, Wheaton, in the amount of $82,000. Defendants paid plaintiffs $2,000 in cash and $4,000 by note payable on June 15, 1979, as earnest money. The contract was subject to the following condition:

"Financing condition: This Contract is subject to the condition that within 21 days from the date hereof, the buyer shall secure, or there shall be made available to the Buyer a written commitment for a loan to be secured by a mortgage or a trust deed on the

property * * *. If after the Buyer has submitted a true loan application and otherwise made every reasonable effort to secure a loan commitment from any source made available to him and has been unable to do so, and he serves written notice thereof upon the Seller or his agent within the time specified herein for securing such commitment, then this contract shall become null and void and all monies paid by the Buyer hereunder shall be refunded. IN THE EVENT THE BUYER DOES NOT SERVE NOTICE OF FAILURE TO PROCURE SAID LOAN COMMITMENT UPON SELLER AS HEREIN PROVIDED, THEN THIS CONTRACT SHALL CONTINUE IN FULL FORCE AND EFFECT WITHOUT ANY LOAN CONTINGENCIES."

On May 4, 1979, defendants were given a loan commitment letter from Naperville Savings and Loan Association subject to credit information clearance. Mr. Thomas was subsequently notified that, effective June 18, 1979, his employment would be terminated. For this reason, defendants' loan application was rejected on June 23, 1979, which was more than 21 days after the execution of the sale contract. Defendants had not previously asked for an extension of time to notify plaintiffs or their agent of the unavailability of a loan commitment. Defendants then notified plaintiffs' agent by letter dated June 23, 1979, that they would repudiate the contract. Plaintiffs, pursuant to paragraph 18 of the sale contract, informed defendants that they had elected to retain the earnest money as liquidated damages and to treat the contract as otherwise null and void.

First United Realtors, the listing broker, held the $2,000 in cash and the $4,000 note payable on June 15, 1979. The plaintiff sellers instituted an action against First United Realtors and the defendant buyers for the earnest money and for the principal and interest due on the note. First United Realtors included a counterclaim in interpleader in their answer. They deposited the cash and the note into the court, and the court dismissed them from the action.

Both remaining parties subsequently moved for summary judgment. The court found that there was no material question of fact and that the plaintiffs were entitled to judgment as a matter of law. Defendants filed a post-trial motion which was denied, and defendants thereupon appealed.

■■ Defendants first contend that the trial court erred in granting summary judgment since a material issue of fact existed as to certain terms and conditions of the contract at the time of its formation. Plaintiffs stipulated that on April 22, 1979, they and the defendants had entered into a contract for the sale and purchase of the real estate in question. The parties further stipulated that on that occasion the real estate agent made photocopies of the original; a photocopy given to defendants consisted of only the face page of the contract, while the copy given plaintiffs consisted of two pages, obverse and reverse. Defendants argue that, since

the photocopy which they received differed from the photocopy that plaintiffs received, the contract was thereby made ambiguous and created two forms of contract and that, therefore, a question of fact exists as to which, if either, of the photocopies constitutes the agreement between the parties. Such an argument totally lacks merit. Since defendants, by their stipulation, admit that they had entered into the contract in question, the terms of that contract are not altered or made ambiguous because thereafter someone made an incomplete photocopy of the instrument.

■■ Defendants also contend that they were discharged from their contractual obligations on the ground of impossibility of performance. Defendants argue that the fundamental subject matter of the contract under review was frustrated and destroyed because of the unexpected loss of employment of one of the buyers which in turn caused the recission of the lender's commitment for mortgage financing and defendants' consequent inability to fulfill their obligations under the contract. The doctrine of impossibility of performance was recognized by the Supreme Court of Illinois in *Leonard v. Autocar Sales & Service Co.* (1945), 392 Ill. 182, *cert. denied* (1946), 327 U.S. 804, 90 L. Ed. 1029, 66 S. Ct. 968; *Leonard* is still the law of this State. See *Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 733-34; *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1974), 17 Ill. App. 3d 237, 241-42.

A long-established rule of contracts is that where the parties, by their own contract and positive undertaking, create a duty or charge upon themselves they must abide by the contract and make the promise good; subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end. (*Leonard,* at 187.) An exception to this general rule is recognized where the continued existence of a particular person or thing is so necessary to the performance of the contract that by law it is implied as a condition of the contract that the death of that person or destruction of that thing shall excuse performance. (*Leonard,* at 187.) This is the doctrine of impossibility.

The subject matter of the contract in question here is the property at 726 Naperville Road. If, for example, the building at 726 Naperville Road were totally destroyed before the contract was consummated, there would be reasons to apply the doctrine of impossibility to perform. The existence or nonexistence of employment by one of the buyers is not an element essential to the performance of the contract, and such loss of employment will not excuse performance of the contract under the doctrine of impossibility.

The *Leonard* court, however, recognized a further extension of the doctrine of impossibility under what it termed the doctrine of frustration:

"It rests on the view that where from the nature of the contract and

the surrounding circumstances the parties when entering into the contract must have known that it could not be performed unless some particular condition or state of things would continue to exist, the parties must be deemed, when entering into the contract, to have made their bargain on the footing that such particular condition or state of things would continue to exist, and the contract therefore must be construed as subject to an implied condition that the parties shall be excused in case performance becomes impossible from such condition or state of things ceasing to exist." (392 Ill. 182, 188.)

The *Leonard* court cautioned, however, that if the event which caused the impossibility might have been anticipated or guarded against in the contract, the parties shall be held to any unqualified undertaking set forth in the contract. *Leonard*, at 189.

Under the doctrine of frustration, it might conceivably be argued that mortgage financing on the part of the buyer was such a condition that the parties when entering into the contract must have known that the contract could not be performed without its continued existence. However, under the circumstances of this case, the doctrine would not excuse performance because the parties not only anticipated the existence of the condition but provided for it in the contract. Under the contract's terms defendant buyers were to have 21 days to secure financing, and the buyers agreed unqualifiedly that if they did not serve notice of failure to procure a loan commitment upon sellers within 21 days, the contract would continue in full force and effect without any loan contingencies. Having failed to serve notice as required under the terms of the contract and having specifically agreed in such event to be bound by the terms of the contract without regard to loan contingencies, the defendants cannot now be excused from their obligations under the contract because of their inability to secure financing. Under these circumstances the doctrine of impossibility or frustration is not applicable.

● 3 Finally, the defendants contend that the trial court erred in entering judgment in favor of the plaintiffs on the promissory note given as part of the earnest money. Since this issue is raised for the first time on appeal, it is not available to be considered even in a summary judgment case. *Anderson "Safeway" Guard Rail Corp. v. Champaign Asphalt Co.* (1971), 131 Ill. App. 2d 924, 929.

We affirm the judgment of the circuit court of the Eighteenth Judicial Circuit, Du Page County, entered and filed on February 21, 1980.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.