INTERIM INVESTMENT CORPORATION, Plaintiff-Appellant, v. PALATINE SERVICE CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 84—1847

Opinion filed November 25, 1985.—Rehearing denied January 2, 1986.

Rosenfeld, Rotenberg, Schwartzman, Hafron & Shapiro, of Chicago (Jerome Rotenberg, of counsel), for appellant.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Robert H. Oakley, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Interim Investment Corporation (Interim) appeals from the order of the circuit court of Cook County granting motions of defendants Palatine Service Corporation (Palatine) and Venture Service Corporation (Venture) to strike Interim's second amended complaint and dismissing the cause with prejudice.

The second amended complaint alleged:

On or about March 7, 1974, Interim entered into a purchase agreement with Thomas B. Rossetter to purchase all of the stock of Oconto Corporation, whose sole asset was 138 acres of vacant real estate in or about Elgin. On or about the same date, Interim entered into a real

estate contract with Valley Homes, Inc., to purchase approximately 10 acres of land located in Elgin. Rossetter required Interim to furnish an unconditional guarantee that all of the covenants of the agreement between Interim and Rossetter to be performed by Interim would be performed in the event of Interim's default under the agreement.

On June 25, 1974, Palatine and Venture (Service Corps.) together with Interim entered into an agreement to guarantee in which Palatine and Venture agreed to give Rossetter an unconditional guarantee to perform, in the event of Interim's default, all of the covenants of the agreement to be performed by Interim pertaining to the real estate contracts provided that they (Service Corps.) would not be required to pay more than $1,348,362. Pursuant to the provisions of the agreement to guarantee, Interim paid $86,390 to Palatine and Venture.

Also on June 25, 1974, a guarantee agreement was entered into by and between Palatine, Venture and Rossetter. It was executed by Palatine, Venture, Rossetter and Interim.

On or about the same date, Interim entered into a real estate contract to sell 25 acres of the land which was the subject of the agreement with Rossetter and the real estate contract with Valley Homes.

The second amended complaint also alleged that Interim performed all of its obligations pursuant to the agreement to guarantee and was ready, willing and able to perform its obligations pursuant to the guarantee agreement. Interim defaulted in its contract with Rossetter, but Palatine and Venture refused to perform their guarantee. As a result of their failure to perform Interim sustained monetary damages.

The second amended complaint was essentially identical with an earlier amended complaint which had been dismissed on February 27, 1984, the order stating in part that the court was "of the opinion that plaintiff, not being a party to the Guarantee Agreement, has no rights thereunder and that nothing in the Agreement to Guarantee required defendants to perform the Guarantee Agreement." On June 25, 1984, the second amended complaint was dismissed with prejudice for failure to state a cause of action.

Interim contends that the trial court was in error in finding that "plaintiff, not being a party to the Guarantee Agreement has no rights thereunder" and that "nothing in the Agreement to Guarantee required defendants to perform the Guarantee Agreement." We agree.

The agreement to guarantee provided in pertinent parts:

> "1. SERVICE CORPS. do hereby agree that they will give to ROSSETTER an unconditional guarantee to perform all of the covenants of the Agreement required to be performed by IN-

TERIM in the event of INTERIM's default under the Agreement, provided, however, that SERVICE CORPS. shall not be required to pay more than $1,348,362.00 ('Amount Guaranteed').

\* \* \*

6. In the event of a default by INTERIM under the Agreement requiring SERVICE CORPS. to perform under their guarantee, then all of INTERIM'S interest in the Agreement and all of INTERIM'S contracts to sell to others will by these presents be considered assigned to the SERVICE CORPS. for their benefit.

7. If SERVICE CORPS. do perform this guarantee, then if INTERIM pays SERVICE CORPS. (a) $50,000.00 or (b) ten per cent of the amount paid by SERVICE CORPS. to ROSSETTER, whichever is less, plus SERVICE CORPS.' related expenses, at the closing between SERVICE CORPS. and ROSSETTER, INTERIM will have an option for 90 days after said closing under the agreement to purchase from SERVICE CORPS. that part of the real estate not sold by INTERIM to others. Said option will be to purchase said real estate at a price equal to the amount paid by SERVICE CORPS. to ROSSETTER plus the SERVICE CORPS.' expenses related to the purchase and performance of the guarantee plus fifteen per cent of the aforesaid. If INTERIM does not exercise said option within the time provided herein, it shall have no further legal or equitable interest in said real estate and the option fee will have been earned by SERVICE CORPS. If said option is exercised within the time provided herein, INTERIM shall receive a credit for the amount of said option fee.

8. INTERIM will establish an account in the amount of $1,500.00 to indemnify the SERVICE CORPS. if they perform under this guarantee. If the SERVICE CORPS. do not perform under this guarantee, the liquid account will be returned to INTERIM. In addition, INTERIM has deposited with ROSSETTER the sum of $66,000.00 which shall be credited toward the total purchase price, whether INTERIM or SERVICE CORPS. complete the purchase from ROSSETTER.

9. INTERIM agrees to pay $84,890.00 to SERVICE CORPS. as consideration for this Agreement to Guarantee, which amount shall be payable upon the execution hereof, and which shall be deemed fully earned upon execution hereof.

10. Nothing herein contained shall be construed to prevent

INTERIM from completing the purchase from ROSSETTER with funds from its own mortgage loan, or other financing, and in that event, upon payment by INTERIM to ROSSETTER of the full purchase price, this guarantee shall be deemed terminated and of no further force or effect and INTERIM shall obtain refund of the liquid account deposited under Paragraph 8 above, but all other monies shall be retained by SERVICE CORPS."

The agreement to guarantee entered into on the same date provided in paragraph 1 that Service Corps. (Palatine and Venture) unconditionally guaranteed to perform all the covenants to be performed by Interim in its agreement with Rossetter in the event of a default by Interim, provided that Service Corps. shall not be requested to pay more than $1,348,362. Paragraphs 4 and 5 imposed certain duties on Interim:

"4. The 123.85 acres covered by this Guarantee Agreement is described on Exhibit C attached hereto. INTERIM and the SERVICE CORPS. will execute a short form Declaration of Interest covering the Real Estate and the shares of Oconto Corporation, which may be recorded in the Office of the Recorder of Deeds of Kane County, Illinois.

5. Anything herein contained to the contrary notwithstanding, all the parties hereto agree that (a) Valley Homes, Inc., is selling real estate and ROSSETTER is selling all the issued and outstanding shares of the capital stock of Oconto Corporation, and (b) any intermediate or subsequent steps required to effectuate the division of the 148.85 acres of real estate known as Pinehurst to conform to the provisions of this Agreement shall be undertaken by INTERIM, or in the event that INTERIM is in default such division of Pinehurst shall be effectuated by the other parties to this Agreement, or other agreements guaranteeing INTERIM's performance."

Defendants argue that the use of the term "if" in paragraphs 7 and 8 of the agreement to guarantee contemplated that defendants might not perform their guarantee and that they thus were not obligated actually to perform. We do not agree.

■■ Because the agreement to guarantee and the guarantee agreement were entered into on the same date, were signed by all parties and imposed duties and granted rights to the parties, both must be considered in determining Interim's right to damages against defendants. *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 454 N.E.2d 676, *appeal denied* (1984), 96 Ill. 2d 572.

■ From the terms of the two documents it is clear that the only condition under which Palatine and Venture would not have to perform their guarantee was in the event that Interim did not default in its agreement with Rossetter.

Paragraph 1 of the agreement to guarantee provided that the defendants were to give Rossetter an *unconditional* guarantee. Paragraph 1 of the guarantee agreement unequivocally stated "Service Corps. do hereby unconditionally guarantee and agree that they will perform all of the covenants of the Agreement [between Rossetter and Interim] required to be performed by Interim in the event of Interim's default under the Agreement."

Paragraph 7 of the agreement to guarantee provides that if Service Corps. "perform this guarantee" and Interim pays Service Corps. a specified amount, Interim will have an option to purchase from Service Corps. that part of the real estate not sold by Interim to others. And paragraph 8 provides for a monetary account to indemnify Service Corps. if they perform "under this guarantee." If they do not perform the account will be returned to Interim.

Paragraph 10 of the agreement to guarantee makes clear the only event which would render the guarantee of no effect: it provides that the guarantee is to be deemed terminated and of no further force or effect in the event the plaintiff paid Rossetter the full purchase price from its own funds.

The use of the word "if" in paragraphs 7 and 8 of the agreement to guarantee does not, as Palatine and Venture assert, change the duty of the defendants to perform from an absolute or mandatory obligation to a discretionary one. The word "if" is merely a conjunction used to introduce those clauses setting forth the rights and duties of the parties in the event there were a default by the plaintiff which would require the performance of the guarantee by the defendants. In *Harris Trust & Savings Bank v. Taylor* (1977), 49 Ill. App. 3d 349, 354, 364 N.E.2d 349, the court said:

> "Moreover, as used in the provision in question, 'if' is a subordinating conjunction which introduces a subjunctive clause and means 'in the event that.' (Webster's Third New International Dictionary 1124 (unabr. ed. 1976); The American Heritage Dictionary 654 (1970).)"

Under paragraph 7, if Interim defaulted in its agreement with Rossetter, then Palatine and Venture would have to perform their guarantee and purchase the real estate from Rossetter, and Interim would have the right to exercise its option and purchase the real estate back from Palatine and Venture. Paragraph 7 merely describes the option

rights of Interim in the event that the Service Corps. were required to perform the guarantee agreement as a result of Interim's default. It does not create a possibility that the Service Corps. will not perform in the event of a default by Interim. A reading of the two documents clearly shows that the Service Corps. would be relieved of performance only in the event that Interim paid the full purchase price to Rossetter.

Similarly, in paragraph 8, "if" means that in the event the plaintiff did not default in its agreement with Rossetter, then the defendants would not have to perform their guarantee.

Because Interim did not pay Rossetter the full purchase price from its own funds and did default in its payments to Rossetter, Palatine and Venture became obligated to perform their guarantee.

The construction of the word "if" in paragraph 7 and 8 sought by Palatine and Venture would mean that Interim paid them in excess of $84,000 for a guarantee which the parties intended not to be enforceable. Obviously such was not the intention of the parties.

Because the guarantee was unconditional, Palatine and Venture were thus required to perform under their guarantee in the event that Interim defaulted in its agreement with Rossetter. Because Interim did in fact default they were under a duty to perform under the terms of the guarantee executed by them.

Interim was a party to the guarantee agreement and had rights under it. The guarantee agreement was executed by Palatine, Venture, Rossetter and Interim. Paragraphs 4 and 5 impose certain obligations to be performed by Interim.

In addition, because paragraph 7 of the agreement to guarantee gave Interim valuable option rights, Interim had a protectable interest not only under the agreement to guarantee but also under the guarantee agreement itself. Its option rights could be exercised by it only in the event the Service Corps. performed pursuant to their obligations under the guarantee agreement. It necessarily follows that Interim has a cause of action against the Service Corps. arising out of the Service Corps.' breach of the guarantee agreement.

■ The second amended complaint alleged the existence of a contract, a breach by defendants, performance of all conditions to be performed by the plaintiff and damages to plaintiff as a consequence. It stated a cause of action. (*Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 296, 408 N.E.2d 1014.) The trial court erroneously struck it.

Palatine and Venture contend that because of certain declaratory judgments they are relieved of liability to Interim. We disagree.

In 1976 Palatine and Venture (Service Corps.) filed a declaratory

suit seeking an adjudication that their obligations under the guarantee agreement given were void. On March 17, 1978, Interim filed suit against the Service Corps. to perform the guarantee agreement. The two cases were consolidated. On September 17, 1982, a declaratory judgment was entered that Service Corps. are not obligated to perform under the guarantee agreement.

In 1979, Rossetter filed suit against Interim in Kane County and on July 28, 1981, obtained a declaratory judgment that the purchase agreement between Rossetter and Interim was void.

Venture argues that the declaratory judgment of the circuit court of Kane County that the agreement between Interim and Rossetter was void, coupled with the declaratory judgment entered for Service Corps. that they had no obligation under the guarantee to Rossetter, relieves them from liability to Interim. We disagree.

■ The damages to Interim had occurred before either declaratory judgment suit had been commenced and long before any judgments in those suits. The damage to Interim was its loss of its right to exercise its option to purchase a portion of the real estate involved. It lost that right because of Service Corps.' failure to fulfill their guarantee. The later judgment in Rossetter's favor in his declaratory judgment action could not and did not release Palatine and Venture as guarantors.

Palatine also argues that the September 17, 1982, declaratory judgment that Service Corps. were not obligated to perform under the guarantee agreement disposes of all issues and that because no notice of appeal was filed within 30 days of its entry, the appeal from the June 25, 1984, order of dismissal was not timely. We disagree. Interim had suffered its damage long before the declaratory judgment. Its second amended complaint stated a cause of action and was improperly dismissed.

Palatine's motion to dismiss which was taken with the case is denied.

Judgment reversed and cause remanded with directions to vacate the order of dismissal and for further appropriate proceedings.

Reversed and remanded with directions.

BUCKLEY, P.J., and CAMPBELL, J., concur.