HARRY PERLMAN, Indiv. and on behalf of all persons similarly situated, Plaintiff-Appellant, v. WESTIN HOTEL COMPANY, Defendant-Appellee.

First District (1st Division)   No. 85—3009

Opinion filed March 16, 1987.

QUINLAN, P.J., dissenting.

Robert P. Harris, of Harold A. Harris, Ltd., of Chicago, for appellant.

Robert J. Rubin and Michael J. Philippi, both of Friedman & Koven, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Harry Perlman, individually and on behalf of all persons similarly situated, appeals from the order of the circuit court of Cook County granting defendant's, Westin Hotel Company's, motion to strike plaintiff's complaint and dismiss the cause with prejudice. We reverse and remand for further proceedings.

Defendant is a Washington corporation licensed to do business in Illinois. Defendant operated the Westin Hotel in Chicago, as well as two restaurants in the hotel, the Consort Room and the Chelsea. The Consort Room, located on the top floor of the hotel, was an expensive restaurant with an elegant atmosphere. The Chelsea, located on the ground floor, was also a high-priced restaurant, although not as deluxe as the Consort Room.

During 1983, defendant mailed promotions to plaintiff and other individuals, offering them membership in a dinner club. The letter stated as follows:

"Welcome to the Westin Dinner Club.

Your Westin Dinner Club Card will be honored at The Consort or Chelsea Restaurants for twelve visits over the next year, and we hope you will enjoy your new membership to it's fullest potential.

With the purchase of one dinner, the complimentary portion of your food check will be determined by dividing the total of the check by the number of people in the party and subtracting that amount from the total.

Restaurant reservations are always recommended and can be made by calling (312) 943-7200 and asking for the restaurant. The membership fee is $50.00 and the card expires one year from the date issued.

The Westin Dinner Club Card is valid in The Consort any Sunday through Thursday excepting Mother's Day, Easter Sunday, Thanksgiving and New Year's Eve. In the Chelsea Restaurant the card is valid seven days a week, including all holidays.

We are extremely pleased to have you as a Westin Dinner Club Member. Please come and visit us soon."

Upon accepting defendant's offer, plaintiff and others received a membership card containing the following language:

"WELCOME DINNER CLUB MEMBERS

Membership entitles you to one complimentary dinner when you purchase at least one other dinner. You are entitled to only one complimentary meal per membership at one time. The amount deducted for the complimentary portion will be calculated by dividing the total food check by the number of people in your party and subtracting the result from the food check. Membership expires one year from date issued. Not valid for alcoholic beverages, tips, taxes, etc. Gratuities are not included.

Card May Be Used In Either

THE CONSORT        CHELSEA

restaurant

Not valid Friday and Saturday evening or Mother's Day, Easter Sunday, Thanksgiving, and New Year's Eve in The Consort. Your card will be honored for both lunch and dinner in the Chelsea Restaurant, seven days a week, including all holidays.

North Michigan at Delaware, Chicago, Illinois   60611

Reservations: 943-7200"

Up until January 1984, plaintiff had used his dinner club card three times. At that time, he attempted to make reservations at the Consort Room, but was informed that defendant had closed the restaurant at the end of 1983.

On February 28, 1984, plaintiff filed a class action against defendant for breach of contract. On April 9, 1984, defendant filed a motion to strike and dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). After a hearing, the trial court granted defendant's motion on September 12, 1985.

The trial court found, among other things, the following: nowhere in the contract between plaintiff and defendant did defendant promise to keep both restaurants open or to maintain a restaurant with the ambience of the Consort Room; the contract between plaintiff and defendant was one calling for alternative methods of performance, thus under Illinois law the option as to manner of performance rested with the promisor, the defendant; and, the defendant was ready, willing, and able to perform the contract for meals in the Chelsea. Therefore, because the court found plaintiff did not allege that defendant failed to honor plaintiff's card at both restaurants, or foreclosed performance altogether by closing both restaurants, the court held that plaintiff failed to state a cause of action as a matter of law.

On appeal, plaintiff essentially argues that the dinner club contract was an option contract, thus plaintiff had the choice of performance. Defendant argues that the contract was an alternative-methods-of-performance contract, thus the choice of performance remained with defendant. We find that the contract was neither an option contract nor an alternative-methods-of-performance contract. We do find, however, that plaintiff's complaint states a cause of action for breach of contract.

■ Plaintiff argues that the contract was an option contract with the right of election in the promisee, the plaintiff. An option contract is an agreement whereby the promisor makes an offer to do something, or to forbear. (*Hermes v. Wm. F. Meyer Co.* (1978), 65 Ill. App. 3d 745, 382 N.E.2d 841.) Usually the action taken by the promisor is the sale of real estate (*e.g., Lake Shore Country Club v. Brand* (1930), 339 Ill. 504, 171 N.E. 494) or stocks (*e.g., Johnson v. Whitney Metal Tool Co.* (1950), 342 Ill. App. 258, 96 N.E.2d 372). The promisee gives the promisor sufficient consideration to keep the offer open for a certain period of time. (*Hermes v. Wm. F. Meyer Co.* (1978), 65 Ill. App. 3d 745, 382 N.E.2d 841.) During that time, the promisee has the option to accept the offer or not. (*Stull v. Hicks* (1978), 59 Ill. App. 3d

665, 375 N.E.2d 981.) The promisor cannot withdraw his offer during the option period. *Wagner v. McClay* (1923), 306 Ill. 560, 138 N.E. 164.

■ The contract at issue in the instant case was not an option contract. The plaintiff paid $50 as consideration for the right to receive a free meal in one of two restaurants, subject to certain date restrictions. Plaintiff thus accepted defendant's offer and became a member of the Westin Dinner Club. A contract was formed and defendant's end of the bargain remained to be performed. Although we agree with plaintiff that it was plaintiff's option to choose which restaurant to dine at, characterizing the contract as an option contract is incorrect. Merely using the word "option" does not create an option contract.

■ Defendant argues that the contract at issue was an alternative-methods-of-performance contract, with the right of election in the promisor, the defendant. An alternative-methods-of-performance contract is an agreement which contemplates two possible ways to perform a contract. Only one method of performance is eventually used or is necessary to carry out the contract. The promisor elects the manner of performance. *Fidelity Federal Savings & Loan Association v. Pioneer National Title Insurance Co.* (S.D. Ill. 1977), 428 F. Supp. 1382; *Standard Distilling Co. v. Consolidated Adjustment Co.* (1910), 157 Ill. App. 215.

■ The contract in the case at bar was not an alternative-methods-of-performance contract. Although there were two restaurants involved, there was only one possible way defendant could have performed, by providing plaintiff with a free meal.

In the present case there existed a contract, the terms of which were contained in one of two documents or both: the initial letter of solicitation from defendant to plaintiff and the membership card. Regardless of which one represented the contract between plaintiff and defendant, the contract provided that plaintiff could choose which restaurant in which to dine, as evidenced by both documents. The letter stated:

"Your Westin Dinner Club Card [will] be honored at The Consort or Chelsea Restaurants * * * The Westin Dinner Club Card is valid in The Consort any Sunday through Thursday excepting Mother's Day, Easter Sunday, Thanksgiving and New Year's Eve."

Using almost the same words, the card states:

"Card May Be Used In Either

THE CONSORT     CHELSEA

restaurant

Not valid Friday and Saturday evening or Mother's Day, Easter Sunday, Thanksgiving, and New Year's Eve in The Consort."

The defendant solicited memberships in the Westin Dinner Club. Part of the inducement for people to join was the inclusion of the exclusive Consort Room in the deal. It seems unlikely that people would have thought it worth their while to pay $50 to enable them to receive a free meal when they dined at either the fancy Consort Room or the less exclusive Chelsea, at the choice of the defendant.

It was understood between the parties that the choice of where to dine was with the member, not the defendant. If, as defendant contends, it meant something else by its offer, then it failed to communicate that fact to plaintiff. In fact, defendant expressly stated a limitation that on certain days members could not use their cards in the Consort Room, thus inferring that at all other times members could use their cards in that restaurant.

■ As defendant points out, nowhere in either document did defendant promise to keep open the Consort Room or to maintain a restaurant with the ambiance of the Consort Room. Neither document, however, reserved to defendant the right to allow or disallow members in either restaurant as defendant so chose; each merely gave defendant that right on certain days. Because "a contract will be construed most strongly against the party who prepared it, since he chose the words that were used and created any ambiguity" (*Quest v. Robertson* (1979), 71 Ill. App. 3d 678, 681, 388 N.E.2d 1335, *appeal denied* (1979), 79 Ill. 2d 617), the terms of the contract in the instant case must be construed against defendant and in favor of plaintiff.

Defendant also argues that it never denied performance because plaintiff could have still eaten at the Chelsea, thus one manner of performance was still available. This reasoning would be correct if the present contract were an alternative-methods-of-performance contract. We have held, however, that it is not such a contract. Plaintiff paid $50 for the right to dine at either of two restaurants. Closing the Consort Room, thus forcing him to dine only in Chelsea, denied him the benefit of his bargain.

Defendant relies on *Sperry & Hutchinson Co. v. Siegel, Cooper & Co.* (1923), 309 Ill. 193, 140 N.E. 864, as support for its position that it had the right to choose in which restaurant plaintiff could use his membership card. In that case, a defendant operated a department store. When the defendant sold merchandise, it issued coupons or profit-sharing stamps to the customers making the purchases. The stamps were redeemable in merchandise or cash as was printed on the stamps. The defendant then disposed of its merchandise to another de-

partment store and retired from business. Thus it rendered itself incapable of redeeming the stamps for merchandise. 309 Ill. 193, 140 N.E. 864.

The court held that the option as to the manner of redemption rested with the promisor. (*Sperry & Hutchinson Co. v. Siegel, Cooper & Co.* (1923), 309 Ill. 193, 140 N.E. 864.) In that case, however, there was no evidence that the new store ever refused to redeem the stamps in either cash or merchandise. In addition, the new store carried the same merchandise as the defendant. Therefore, the plaintiff could have redeemed the stamps for merchandise at the new store. Although the merchandise was not the defendant's actual merchandise, it was exactly the same kind.

In the case at bar, however, defendant closed the Consort Room. Plaintiff could dine at the Chelsea or nowhere. The Consort Room did not merely change owners, as in *Sperry & Hutchinson*, but closed down completely. Thus, plaintiff no longer had a choice of restaurants, whereas in *Sperry & Hutchinson* the choice between cash or merchandise still existed.

*Sperry & Hutchinson* is further distinguishable from the instant case for the following reasons. First, in the former case, customers gave no consideration to receive the stamps. The defendant store gave them to customers merely for purchasing items at its store. On the other hand, in the present case plaintiff paid $50 consideration.

Second, in *Sperry & Hutchinson* the stamps were redeemable in cash or for merchandise of approximately equal value. The value of 750 stamps was $1.75 worth of merchandise or $1.25 in cash. The value of 1500 stamps was $3.50 worth of merchandise or $2.50 in cash. Here, however, the restaurants were quite different. One was expensive and luxurious, while the other was much more casual.

Defendant argues, though, that plaintiff would be getting the same thing in either restaurant, a free meal. We believe, however, that plaintiff did not bargain for a free meal anywhere. He bargained for a free meal at one of two restaurants. He was thus deprived of his right to dine in the more exclusive of the two restaurants.

Lastly, in *Sperry & Hutchinson* the stamps contained no restrictive language on them. Here, however, plaintiff's membership card stated that it was not valid on certain days. It was reasonable for plaintiff to infer that on the other days the card would be honored.

We believe that the present case is similar to *Aldrich v. Bay State Construction Co.* (1904), 186 Mass. 489, 72 N.E. 53, and find the court's reasoning in that case to be persuasive. In *Aldrich*, the plaintiffs were selling railway ties. The defendant offered to buy them for a

price less than that which plaintiffs were asking. In addition to cash, however, the defendant offered to pay in stock in either of two railway companies. The plaintiffs agreed to that arrangement and sent defendant a letter stating that they would "take stock in either the Greenfield & Turners Halls or Deerfield roads." (186 Mass. 489, 490, 72 N.E. 53.) The defendant then sent the plaintiffs a check plus shares of stock in one of the railway companies. The plaintiffs returned both the check and the shares of stock to defendant. The plaintiffs argued that the choice of with which stock the defendant would pay was the plaintiffs. 186 Mass. 489, 72 N.E. 53.

The Massachusetts court held that:

"[T]he word [either] when used in a connection which implies a choice of action on the part of the person using it indicates that the option is in the person who is to do the act involving the choice. It is the person who is to take one of two apples who may take either apple." (186 Mass. 489, 492, 72 N.E. 53, 54.)

In addition, the "action promised [was] action on the part of the plaintiffs." 186 Mass. 489, 493, 72 N.E. 53, 54-55.

Similarly, in the instant case, the terms of the contract provided for action to be taken by plaintiff. The membership card stated:

"Card May Be Used In Either
THE CONSORT        CHELSEA
restaurant"

Plaintiff would have been the one "using" the card; thus, the choice of where to "use" it was plaintiff's.

Because the trial court's order was entered upon allowance of defendant's motion to dismiss, all facts properly pleaded in the complaint must be taken as true. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiff to recover. *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790.

■ A complaint for breach of contract must allege (1) the existence of a contract, (2) a breach by defendant, (3) performance of all conditions to be performed by plaintiff, and (4) damages to plaintiff as a consequence. (*Interim Investment Corp. v. Palatine Service Corp.* (1985), 139 Ill. App. 3d 118, 487 N.E.2d 15, *appeal denied* (1986), 111 Ill. 2d 584; *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 408 N.E.2d 1014.) Plaintiff has so alleged.

■ Based on the foregoing, we find that plaintiff has at least stated a cause of action for breach of contract and should be given the opportunity to prove his alleged damages at trial.

The dismissal of the complaint is reversed and the cause is re-

manded for further proceedings.

Reversed and remanded.

BUCKLEY, J., concurs.

PRESIDING JUSTICE QUINLAN, dissenting:
I respectfully dissent from the resolution of this matter by the majority. I dissent because I cannot agree with the legal analysis of the majority that suggests we are confronted here with a simple breach of contract under an agreement requiring performance in the defendant in either of two ways, with the choice of performance in the plaintiff. The majority has concluded that since the defendant refuses to perform in the manner the plaintiff has presently chosen, the defendant has breached the contract. I do not see this case that simply. It is not that the defendant refuses to perform in the manner the plaintiff has chosen, but it is *impossible* for him to perform in that manner, and the plaintiff knows it. Prior to requesting performance in the Consort Room under the terms of the contract (I do agree that a contract existed between the plaintiff and the defendant, Westin Hotel), the plaintiff had used his membership three times, all at the Chelsea Room. In January 1984, the plaintiff for the first time requested a reservation at the Consort Room (which had closed at the end of 1983), apparently to take advantage of the discounted meal in that restaurant provided by his diners' membership card. Hence, the issue under these circumstances is whether the defendant breached its membership contract with the plaintiff where the restaurant chosen by the plaintiff no longer existed and where the other restaurant that was provided as one of the alternatives in the agreement was available.

Initially, it must be noted, as the majority itself observed and as the defendant argues here and the trial court found after reviewing the agreement, *the defendant did not promise to keep the Consort Room open or to maintain a restaurant with the "alleged" ambience of the Consort Room.* I say "alleged," since it is merely an allegation in the complaint that the Consort Room was more deluxe than the Chelsea Room and had a certain ambience. The majority apparently seems to believe that judicial notice may be taken of its "ambience" when they state, "It seems unlikely that people would have thought it worth their while to pay $50 to enable them to receive a free meal when they dined at either the fancy Consort Room or the less exclusive Chelsea Room," at the choice of the defendant." However, no description was given of either restaurant in the membership offer or the membership

itself, nor was any evidence offered regarding the nature of the restaurants.

The trial judge, in his decision, also noted that there was nothing in the undertaking, whether it be the offering or the membership card or both, that constituted the agreement, that indicated that the defendant hotel promised to maintain an expensive a la carte menu in the Consort Room or that whatever might be the expectations of a dinner club member, those expectations would have any relevancy in the decisions of the management in considering how to run either or both restaurants. He further noted that if both rooms continued to operate, but changed their menus so that one sold hamburgers and the other sold pizza, the plaintiff would still be able to receive what he had bargained for, that is, a discounted meal. I believe that the trial court was correct in its finding that the defendant hotel did not contract to satisfy the subjective preference of the plaintiff or the other club members, but merely contracted to provide a discounted meal at one of two specifically named restaurants.

Under such circumstances, I believe it is clearly the law in Illinois that where a contract provides for alternative performances, unless the right of election between the alternative modes of performance of a contract is otherwise expressly restricted by the provisions of the contract itself, the right to elect which of the alternatives will be performed is in the promisor. (*Fidelity Federal Savings & Loan Association v. Pioneer National Title Co.* (S.D. Ill. 1977), 428 F. Supp. 1382; see also *Sperry & Hutchinson Co. v. Spiegel, Cooper & Co.* (1923), 309 Ill. 193, 140 N.E. 864; *Metz v. Albrecht* (1869), 52 Ill. 491; 12a Ill. L. & Prac. *Contracts* sec. 245 (1983); 17 Am. Jur. 2d *Contracts* sec. 363 (1964).) Accordingly, inasmuch as the Chelsea Room was open, and the plaintiff did not allege that the defendant was other than ready and willing to provide performance there, the complaint did not state a cause of action for breach of contract.

The majority distinguished the Illinois Supreme Court case of *Sperry & Hutchinson Co. v. Spiegel & Cooper Co.*, which expressly found that where alternative means of performance are provided in a contract, the rule in this State and the general rule in the country is that the choice of the manner of performance rests with the promisor. I, however, do not find their basis of distinction persuasive. Initially, the majority noted that the department store which had issued the profit-sharing stamps, redeemable in merchandise or cash in *Sperry & Hutchinson,* had rendered itself incapable of performing by disposing of its merchandise to another department store. However, the majority seems to attach some importance to the fact that there was no evi-

dence that the new store refused to redeem the stamps in merchandise, even though the majority itself recognized that this had nothing to do with the holding of the case, which was that the option concerning the manner of redemption rested with the promisor. Nevertheless, the majority then finds the distinguishing feature from the present case to be that the new department store there had comparable merchandise to that of the old department store, whereas here the Consort Room "closed down completely." I do not find these facts, in any way, relevant in view of the explicit holding of *Sperry & Hutchinson*, let alone persuasive under such circumstances.

Nor do I find persuasive their asserted distinction in the *Sperry & Hutchinson* case that the value of the merchandise and the cash redemption there was approximately equal, *i.e.*, the value of the stamps was $3.50 in merchandise or $2.50 in cash. The contract here, contrary to the majority's position, actually promised a discounted meal at either of the two expensive restaurants—one of which was only slightly more expensive than the other.

The majority also would distinguish *Sperry & Hutchinson* on the basis that apparently the stamps were "free" for shopping at defendant's department store. It is surely naive to suggest in a business setting that a promotional device is free or a gift; it is actually a cost of inducing one to purchase at the defendant's store and truly a legitimate cost of doing business reflected in the store's pricing policies. Hence, it could be argued in the same sense that the majority has called the stamps "free," that the meal here was "free," or without consideration, since the $50 fee for 12 meals can hardly be said to cover the cost of the meals. Of course, in fact, the consideration for the agreement is the inducement to purchase (here food and there merchandise) at the defendant's place of business.

The final point of distinction noted by the majority, *i.e.*, that restrictions existed in the membership card while none were contained on the stamps, is, in my opinion, again, irrelevant and actually incorrect. The existence or nonexistence of the fact that restrictions existed in the one case and not the other seems to me to be a distinction without a legal difference, since, as was noted earlier, this was not the basis for the decision in *Sperry & Hutchinson*. However, an important restriction did in fact exist in the *Sperry & Hutchinson* case concerning the use of the stamps there, which appeared on the stamps themselves, *viz*, they were redeemable only in person and only by the person to whom they had been issued to originally. This restriction, on the other hand, was a decisive factor in that case while, conversely, the restrictions here were not.

The majority in its opinion found a Massachusetts case to be similar to the present case and persuasive. In that case the agreement provided that the promisor could pay for railroad ties in stock in either one of two different railroad companies. Under those circumstances, the Massachusetts court held that it was the promisee who could choose the stocks in which payment would be made. While it is important to observe, initially, that this is not an Illinois case, there is an even more important reason why that case is not similar to the present case: both means of performance there were still possible.

In the present case, the fact that both means of performance are not available is to me probably the most important aspect of this case in determining whether the defendant has breached its contract. This is so, because, if this contract did not provide for alternative modes of performance which the defendant could elect to perform in its option, then it was a contract in which the defendant promised to provide either of two performances at the plaintiff purchaser's option, one of which is now no longer possible to perform. In this latter situation, I believe the law certainly excuses performance by the promisor, if the impossibility occurs without the fault of the promisor, *i.e.*, the performance has not been intentionally frustrated to prevent the promisee from receiving it. (See *Leonard v. Autocar Sales & Service Co.* (1945), 392 Ill. 182, *cert. denied* (1945), 327 U.S. 804, 90 L. Ed. 1029, 66 S. Ct. 968; *Mouhelis v. Thomas* (1981), 95 Ill. App. 3d 181, 419 N.E.2d 956; 6 A. Corbin, Contracts sec. 1339 (1962); 18 S. Williston, Contracts secs. 1952, 1954, 1961 (3d ed. 1978).) Here, there is no allegation by the plaintiff that the closing of the Consort Room was other than a proper business decision having nothing whatsoever to do with the plaintiff or the other members of the dining club. Hence, under these circumstances, there is no breach of contract; the promisor may provide the alternative performance (see 18 S. Williston, Contracts sec. 1961 (3d ed. 1978)), or, if the promisee does not desire this, which apparently is the case here, the promisor may obtain a rescission of the contract and will be entitled to a return of his consideration, here a $50 membership fee, less than *quantum meruit* value of the defendant's previous performance, *i.e.*, the value, at least, of the three prior performances. (18 S. Williston, Contracts sec. 1972 (3d ed. 1978).) However, in this case, the plaintiff did not ask that the contract be rescinded and his consideration be returned, but rather only brought a breach of contract action. Furthermore, it appears that the plaintiff did not request the trial court for leave to amend his complaint, but apparently stood upon the complaint as drafted. Thus, under either analysis, the complaint of the plaintiff here was properly dismissed by

the trial court. See *Illinois Tool Works v. Sierracin Corp.* (1985), 134 Ill. App. 3d 63, 479 N.E.2d 1046.

Additionally, I would also like to observe that I do not see how, under any circumstances, even assuming a cause of action, a proper class action can be stated. (Ill. Rev. Stat. 1985, ch. 110, par. 2—801 *et seq.*) First, I do not believe that the class is so numerous that a class action is necessary, and, secondly, I do not believe that any common question of law or fact would predominate here or that the plaintiff would be an adequate representative of any such class. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—801.) The particular loss of the plaintiff here is not really a monetary one (which, in any event, would be most difficult to measure), but is really a subjective one dealing with his perceived concept of ambience and dining atmosphere, as well as his concept of what constitutes a "deluxe" menu. Of course, each member of the Westin Dinner Club would have their own view of what they might have found most appealable about the defendant's offer of a discounted meal at either of the two restaurants here. Additionally, if the plaintiff had brought an action for rescission there would, clearly, be no basis for a class action since a suit for rescission is by its nature peculiarly personal to the plaintiff and specifically related to the particular facts of this case.

Therefore, based on the reasons set forth above, I would affirm the judgment of the circuit court of Cook County which dismissed with prejudice the complaint in the present case.