■ SOL ZIGMAN, Appellant, v ROBERT M. ROSEN, Respondent. —In an action to recover damages for breach of contract, the plaintiff appeals, on the ground of inadequacy, from a judgment of the Supreme Court, Nassau County (Christ, J.), entered April 17, 1985, which, after a nonjury trial, awarded him only the principal sum of $1,594.86.

Ordered that the judgment is reversed, on the law and the facts, and the matter is remitted to the Supreme Court, Nassau County, for entry of an appropriate amended judgment for the sum of $15,240 less any amounts paid by the defendant toward that obligation plus interest at the statutory rate (see, CPLR 5004) on each unpaid installment of $435.43 from the date that the installment was due.

Effective January 1, 1980, the defendant entered into a partnership agreement with the plaintiff, an employee in the defendant's accounting firm. Pursuant to this agreement, the plaintiff became a 5% partner in the accounting firm and could, at his option, purchase up to 25% of the equity ownership of the firm over the term of the agreement. The defen-

dant had the option of unilaterally terminating the agreement, with or without cause, on terms that were not oppressive (paras 7.1 and 7.3). Paragraph 5.6 of the agreement provided, *inter alia,* that upon termination of the agreement prior to December 31, 1982, the defendant would have the right to repurchase the plaintiff's equity in the accounting firm; the purchase price was to be paid by the defendant to the plaintiff in a number of equal monthly installments, equal to the number of months between January 1, 1980 and the date of the termination. The monthly installments were to bear no interest. Paragraph 5.7 provided the defendant with the option, in lieu of paying money to the plaintiff for the repurchase of the plaintiff's equity ownership, of assigning to the plaintiff the accounts of the firm. The plaintiff had the right, upon termination of the agreement, to take with him any new clients which the plaintiff brought to the firm, and the agreement did not contain a restrictive covenant not to compete *(see, Gelder Med. Group v Webber,* 41 NY2d 680; *Purchasing Assocs. v Weitz,* 13 NY2d 267, 271-272, *rearg denied* 14 NY2d 584), which would preclude the plaintiff from soliciting and performing accounting services for the firm's clients for a reasonable period after the effective date of the termination. The rider to the agreement contained such a restrictive covenant; however, it was only applicable in the event the plaintiff resigned from the partnership.

By letter dated December 7, 1982, the defendant furnished the plaintiff with written notice that he was exercising his right, pursuant to the agreement, to terminate the partnership, effective December 1, 1982. By letter dated December 17, 1982, the defendant set forth computations showing the value of the plaintiff's equity in the firm, in accordance with the formula set forth in the agreement. Based on these computations, which are not in dispute, the purchase price of the plaintiff's equity amounted to $15,240. The defendant stated in the letter that this amount would be payable to the plaintiff over the next 35 months, without interest, in the sum of $435.43 per month. The plaintiff affixed his signature to a space on the letter, indicating that he agreed and accepted the buy-out terms of the letter. In accordance with his letter of December 17, the defendant tendered and the plaintiff accepted a check, in the sum of $435.43, representing the first *monthly* payment due December 1982.

Subsequently, the defendant received letters from clients of the firm whose accounts had not been acquired by the plaintiff but had been serviced by the latter as either an employee or a

partner of the firm, informing the defendant that the firm was no longer being retained as their accountant. After making inquiries, the defendant discovered that these clients had retained the plaintiff as their accountant. Thereafter, the defendant sent the plaintiff a letter, dated January 24, 1983, purporting to exercise his option under the partnership agreement to assign accounts, rather than to pay cash, for the plaintiff's equity in the partnership. Pursuant to this letter, the defendant assigned the accounts of clients who had discharged the defendant and retained the plaintiff as their accountant. The defendant informed the plaintiff that the difference between the value of said accounts and the plaintiff's equity interest would be paid in cash by defendant over a period of 35 months. Since the sum of $435.43 had already been paid to the plaintiff, which purportedly covered the amount owed over the first seven months, the defendant did not tender another check to the plaintiff until July 1983. This check, in the sum of $42.25, was returned by the plaintiff, who had in the interim commenced the instant action to recover damages for breach of contract.

The critical issue is the legal effect, as between the parties to a bilateral contract, of a provision in that contract which grants to one party the right to elect between alternative methods of performance. Paragraph 5.7 of the agreement vested in the defendant the right of election between alternative methods of performing the purchase of the plaintiff's equity interest in the accounting firm upon the termination of the agreement. Once an election has been made, the contract ceases to be an alternative contract (see, 5 Corbin, Contracts § 1079; 11 Williston, Contracts § 1407 [3d ed 1961]) and the electing party is obligated to perform in accordance with the method of performance elected by him (see, Fidelity Fed. Sav. & Loan Assn. v Pioneer Natl. Tit. Ins. Co., 428 F Supp 1382, 1386; see also, 17 Am Jur 2d, Contracts, § 363). Here, the defendant elected to pay cash, as evidenced by his letter to the plaintiff dated December 17, 1982, and his tender of the first monthly cash installment in the sum of $435.43. This election fixed the defendant's obligation as between the parties and was irrevocable in the absence of the plaintiff's consent (5 Corbin, Contracts § 1079). Consequently, the defendant was obligated to pay cash and he could not, thereafter, unilaterally assign accounts in lieu of paying cash. Accordingly, the trial court erred in holding that the defendant acted within his contractual rights in choosing to assign accounts, after having previously elected to pay cash. The matter is remitted to the

trial court for entry of a judgment awarding the plaintiff damages for breach of his contract to pay $15,240 in cash for the purchase of plaintiff's equity in the firm, with appropriate reductions for payments made by the defendant, plus interest at the statutory rate *(see,* CPLR 5004) on each unpaid installment of $435.43, from the date that the installment was due. Brown, J. P., Weinstein, Rubin and Kooper, JJ., concur.